James BAYLIS, Antonio Bellezza, Hector Torres, Jorge F. Moncayo, Raul Laredo, Martin Murphy, Attilio DiChiara, Arleigh Hartman, Jose Maldonado, Frances R. Souza, Carlito Fiel and Ortrander Sebastian on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

MARRIOTT CORPORATION and Pan American World Airways, Inc., Defendants,

Marriott Corporation, Defendant–Appellant.

James BAYLIS, Antonio Bellezza, Hector Torres, Jorge F. Moncayo, Raul Laredo, Martin Murphy, Attilio DiChiara, Arleigh Hartman, Jose Maldonado, Frances R. Souza, Carlito Fiel and Ortrander Sebastian on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

MARRIOTT CORPORATION and Pan American World Airways, Inc., Defendants–Appellees.

Nos. 445, 447, Dockets 87–7575, 87–7615.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1987.

Decided April 8, 1988.

Carole O'Blenes, New York City (Saul G. Kramer, Aaron J. Schindel, Susan B. Singley, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for Marriott Corp.

Ronald G. Russo, New York City (Cynthia R. Finn, Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, New York City, of counsel), for Baylis et al.

Richard Schoolman, New York City (Pan Am Legal Dept., New York City, of counsel), for Pan American World Airways, Inc.

Before PIERCE, MINER and DAVIS,* Circuit Judges.

\* Honorable Oscar H. Davis, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

## AMENDED OPINION

DAVIS, Circuit Judge:

These appeals involve two suits by former employees of Pan American World Airways (Pan Am), one against Pan Am, the other against the Marriott Corporation (Marriott). In 1985 Pan Am closed its in-house catering operations and replaced them with catering services provided by Marriott. Former Pan Am commissary workers who lost their jobs when the catering facilities were shut down sued Pan Am for breach of their collective bargaining agreements. The District Court for the Eastern District of New York granted Pan Am summary judgment on the merits. We hold that under the Railway Labor Act (RLA), 45 U.S.C. § 151–188, jurisdiction to resolve this contract dispute lies solely with the Adjustment Board created by that statute. Since the district court lacked jurisdiction to entertain this claim, we vacate the summary judgment and remand to the district court to dismiss for lack of subject matter jurisdiction.

The dismissed workers also sued Marriott for tortious inducement of the alleged breach of their contract with Pan Am. The court rejected Marriott's motion to dismiss, but certified an interlocutory appeal to this court pursuant to 28 U.S.C. § 1292(b). The claim against Marriott is solely a pendent state-law claim without any independent basis for federal jurisdiction. With the dismissal of the claim against Pan Am, the pendent claim against Marriott should also be dismissed (unless, on remand, plaintiffs properly amend their complaint against Marriott to invoke diversity jurisdiction).

## I. *Background*

Until 1985 Pan Am maintained an in-house staff of commissary workers who performed catering services such as preparation of food and liquor kits. In 1980 the airline negotiated an agreement with the collective bargaining agent of these commissary workers, the Transport Workers of America (TWU), for the gradual replace-

ment of the in-house catering operations by private vendors. The workers accepted the eventual elimination of catering services, but in return Pan Am agreed not to lay off any workers. As the catering services were phased out the workers were to be given other jobs within Pan Am. This agreement was embodied in a Memorandum of Agreement between Pan Am and the TWU dated November 21, 1980 (the "No Layoff Guarantee").[1] The No Layoff Guarantee was appended to the general collective bargaining agreement (the "Basic Agreement") between Pan Am and the TWU which covered not only the 700 commissary workers but also 5,000 airline mechanics and ground service employees. The Basic Agreement became effective upon ratification on December 24, 1980 and expired by its express terms on June 30, 1983 (later extended by mutual agreement to December 31, 1984). The No Layoff Guarantee became effective by its terms on December 24, 1980 and did not mention any expiration date.

As the expiration of the collective bargaining agreements between Pan Am and the TWU approached, Pan Am served notice on the TWU on September 7, 1984, of changes that it intended to make when the 1980 agreement expired. One of these proposed changes was to delete the entire Memorandum containing the "No Layoff Guarantee." Pan Am and the TWU then negotiated over this and other matters. Relations between Pan Am and its employees are governed by the RLA, *see* 45 U.S.C. § 181, which provides detailed procedures for the resolution of disputes between labor and management in the transportation industries.[2] Negotiations and mediation conducted within the framework of the RLA were unsuccessful.[3] After the mandatory waiting period expired at midnight on February 27, 1985, the union struck and Pan Am closed its catering facilities and contracted with Marriott to provide catering services. The changes instituted by Pan Am and the strike by the workers were both forms of self-help that are permissible after all of the procedures for dispute resolution required by the RLA are exhausted. *Brotherhood of R.R. Train-*

---

1. The No Layoff Guarantee stated:

   3. No Layoff Guarantee

   The Company agrees not to layoff Catering employees covered by the above referenced Agreements who are on the payroll or Leave of Absence as of the date of the signing of the Agreement and who are listed on Attachment A to this Memorandum of Agreement except for strikes, Acts of God, grounding of aircraft, loss of operating certificates, or curtailment of services due to U.S. or foreign government restrictions....

   In the event that all food service is eliminated, including services provided by vendors, at a location where Catering employees are assigned, such employees at that location will be absorbed into the system.

   It is further agreed that the employees covered under this Agreement who remain in Catering classifications shall continue to receive the percentage wage and/or benefit negotiated for Pan Am employees covered under the Mechanics and Ground Service Agreement. With the exception of the modifications provided by this Agreement, the general conditions of the Commissary and Port Steward contracts shall remain in full force and effect. The parties agree to cooperate in the implementation of efficient work rules for the purpose of providing an improved and more competitive service.

2. For a discussion of the purpose and design of these statutory procedures, see *Brotherhood of*

*Ry. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377–80, 89 S.Ct. 1109, 1114–16, 22 L.Ed.2d 344 (1969); *Local 553, Transport Workers Union v. Eastern Air Lines*, 695 F.2d 668, 674–75 (2d Cir.1982); *International Ass'n of Machinists & Aerospace Workers v. National Mediation Bd.*, 425 F.2d 527, 533–34 (D.C.Cir.1970).

3. Pursuant to 45 U.S.C. § 156, Pan Am notified the TWU of intended changes in the agreement affecting rates of pay, rules and working conditions thirty days before the start of bargaining on these issues. When negotiations reached an impasse, Pan Am invoked the services of the National Mediation Board to assist the Parties through mediation. 45 U.S.C. § 183. On January 28, 1985 the National Mediation Board notified the parties that in the judgment of the Board all practical methods provided by the RLA for effecting a settlement were exhausted, and released the parties from mediation. For an additional thirty-day period the parties were required to maintain the status quo. 45 U.S.C. § 155 (First). The parties continued to negotiate. On the last day of the thirty-day status quo period, Pan Am offered to drop its demand to eliminate the No Layoff Guarantee if the TWU agreed on all other issues and if there was no strike. The TWU rejected this proposal and the thirty-day status quo period expired.

*men v. Jacksonville Terminal Co.,* 394 U.S. 369, 378–80, 89 S.Ct. 1109, 1115–16, 22 L.Ed.2d 344 (1969).

After a strike lasting four weeks, the parties reached a tentative agreement. The new collective bargaining agreement eliminated the No Layoff Guarantee. The agreement was ratified by a majority of the TWU members, and became effective on March 27, 1985. Catering employees whose jobs were discontinued were given a choice between accepting termination in exchange for a severance payment, or receiving priority in filling other positions within Pan Am if they could qualify for those jobs. The workers who accepted these options did not sign any releases barring them from future litigation against Pan Am or its agents.

## II. *The current litigation*

On September 3, 1985, a group of former commissary workers who are no longer employed by Pan Am brought an action on behalf of themselves and the class of similarly situated workers. They sued Pan Am in the district court for breach of contract and Marriott for tortious inducement of the alleged breach of contract. The workers initially filed suit only against Marriott in the New York State Supreme Court, Kings County, for tortious interference with their employment agreement with Pan Am. Marriott removed the action to the United States District Court for the Eastern District of New York. The plaintiffs then amended their complaint adding a claim against Pan Am for breach of contract. The Amended Complaint asserted that the district court had jurisdiction under 28 U.S.C. §§ 1331 and 2201, 45 U.S.C. § 151 *et seq.*, and under the principles of ancillary and pendent jurisdiction. Diversity jurisdiction was not alleged. The position of the plaintiffs was that the No Layoff Guarantee in the 1980 agreement was a contractual guarantee that the commissary workers would be employed by Pan Am in some capacity throughout their working lifetimes, and that the later actions of Pan Am represented a breach of that contract.

Pan Am and Marriott jointly moved for summary judgment on the merits, and also for dismissal for lack of subject matter jurisdiction. Pan Am argued that the No Layoff Guarantee expired when the Basic Agreement to which it was appended ended, and the protections once afforded to the workers by the No Layoff Guarantee no longer existed. Pan Am also argued in the alternative that the district court lacked jurisdiction because jurisdiction to resolve disputes over the interpretation of RLA collective bargaining agreements lies exclusively with arbitration panels, called Adjustment Boards, which are mandated by 45 U.S.C. § 184.

The district court granted Pan Am's motion for summary judgment on the merits, although on grounds different from those urged by Pan Am. The court reasoned that when Pan Am and the TWU negotiated a new collective bargaining agreement which did not contain the No Layoff Guarantee, they effectively modified and replaced the original No Layoff Guarantee. Since the No Layoff Guarantee was found to be subject to renegotiation, and since Pan Am was not in breach of the amended contract, the plaintiffs had no basis for maintaining their action.

The court then denied Marriott's companion motion to dismiss or for summary judgment. The court's opinion was that, although the new agreement between Pan Am and the TWU had replaced the contract that Marriott was said to have interfered with, and accordingly resolved the dispute between Pan Am and the union, this did not relieve Marriott of liability for any wrongful conduct in inducing a breach of the original contract. The court also rejected Marriott's argument that the plaintiffs' state-law tort claim was preempted by federal labor law. The court then concluded that it was unnecessary to decide whether the plaintiffs' state-law claim was preempted since the plaintiffs had stated a cause of action for tortious interference under federal common law.

Marriott moved for reconsideration. The motion to dismiss was again denied, but on somewhat different grounds. The court

rejected Marriott's arguments that the No Layoff Guarantee could not have been breached because Pan Am had followed Railway Labor Act procedures. The court also held that the compulsory dispute resolution mechanisms of that Act did not apply to Marriott since Marriott was not a party to the agreement. This time the court explicitly concluded that the state-law claims against Marriott were not preempted by federal labor laws since they did not necessarily interfere with federal labor policy. The court recognized, however, that there was substantial ground for disagreement with its conclusions concerning the controlling questions of federal preemption. The court therefore certified the question of preemption for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### III. *Plaintiffs' suit against Pan American*

Labor disputes in the airline industry are governed by the RLA. 45 U.S.C. § 181. The RLA (unlike the National Labor Relations Act, which covers other industries) mandates the establishment of arbitration panels called "Adjustment Boards" composed of members selected by the air carriers and by labor organizations representing the employees. *Id.* §§ 153, 184–185. The Adjustment Boards have jurisdiction to consider disputes between air carriers and their employees "growing out of grievances, or out of interpretation or application of agreements concerning rates of pay, rules, or working conditions...." *Id.* § 184. The final decisions of the Adjustment Boards are "final and binding upon both parties to the dispute." *Id.* § 153 (First)(m). The awards of the Adjustment Boards can be enforced through the federal courts, *Id.* § 153 (First)(p), and are subject to limited judicial review, *Id.* § 153 (First)(q).

■ The congressional purpose in setting up these procedures in the RLA was to keep these disputes "within the Adjustment Board and out of the courts." *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The arbitration procedures established by the Railway Labor Act are mandatory and provide the exclusive forum for the resolution of grievances and for the interpretation of contracts under that Act. *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 322–24, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972); *Bautista v. Pan Am World Airlines*, 828 F.2d 546, 551 (9th Cir.1987); *Independent Union of Flight Attendants v. Pan American World Airways*, 789 F.2d 139, 141 (2d Cir.1986); *Crusos v. United Transp. Union, Local 1201*, 786 F.2d 970, 972 (9th Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986). The only alternative to the Adjustment Board is voluntary binding arbitration using arbitrators chosen by the parties. 45 U.S.C. §§ 157–159.

■ The claim of the commissary workers against Pan Am for breach of contract requires the interpretation of the terms of a collective bargaining contract. The key legal issues are the duration of the No Layoff Guarantee and whether or not it is amendable. Jurisdiction to consider these questions lies exclusively with the appropriate Adjustment Board. The district court lacked subject matter jurisdiction to decide the merits of this case by granting summary judgment in favor of Pan Am. Jurisdiction of federal courts in this matter is restricted to limited review of the decisions of the Adjustment Board. *Id.* § 153 (First)(q).

In a similar case brought by another group of former Pan Am commissary workers arising out of the same events, the Ninth Circuit reached the same result, finding that the district court had no jurisdiction over the workers' breach of contract claim against Pan Am because the RLA grants exclusive jurisdiction to the Adjustment Board. *Bautista*, 828 F.2d at 552. *See also Brotherhood of Teamsters v. Western Pacific R.R.*, 809 F.2d 607 (9th Cir.) (suit claiming lifetime employment contract dismissed since Adjustment Board has exclusive jurisdiction), *cert. denied,* — U.S. —, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987).

Disputes growing out of grievances or out of the interpretation or application of

existing collective bargaining agreements, which are the exclusive province of the Adjustment Boards, have been termed "minor" disputes to distinguish them from "major" disputes. *Elgin, Joliet & Eastern Ry. v. Burley,* 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945); *Air Cargo, Inc. v. Local Union 851, Int'l Bd. of Teamsters,* 733 F.2d 241, 245 (2d Cir.1984); *Local 553, Transport Workers Union v. Eastern Air Lines, Inc.,* 695 F.2d 668, 673–75 (2d Cir.1982). "Major" disputes concern "the formation of collective [bargaining] agreements or efforts to secure them." *Elgin,* 325 U.S. at 723, 65 S.Ct. at 1290. In "major" disputes "the issue is not whether an existing agreement controls the controversy. They ["major disputes"] look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Id.* Plaintiffs argue that their claim against Pan Am is a "major" dispute over which federal courts have jurisdiction, citing *Seaboard World Airlines v. Transport Workers Union,* 425 F.2d 1086, 1090 (2d Cir. 1970).[4] Yet the workers are asserting rights which they contend have vested in the past. The No Layoff Guarantee vested on December 24, 1980. The plaintiffs argue that it did not expire when the Basic Agreement expired on December 31, 1984, and was not amended by the new contract that was ratified on March 27, 1985. Whether the workers are correct in those assertions depends on interpretation of the terms of the 1980 agreements. If the question of whether a dispute is "major" or "minor" is close, it should be viewed as being "minor" unless the carrier's contractual justification is "obviously insubstantial" and the contract is not "reasonably susceptible" to the carrier's interpretation. *Local 553,* 695 F.2d at 673. The position taken by Pan Am is not "obviously insubstantial." Therefore, the dispute to be resolved is "minor" and exclusive jurisdiction for resolving this dispute lies with the Adjustment Board.

Because the district court had no jurisdiction to resolve this dispute, the summary judgment in favor of Pan Am must be vacated and the case against Pan Am must be remanded to the district court with instructions to dismiss for lack of subject matter jurisdiction.

### IV. *Plaintiffs' suit against Marriott*

With the dismissal of the claim against Pan Am, we are left with the claim against Marriott for tortious inducement of breach of contract. We must examine whether there is any basis for a federal court to retain jurisdiction over this claim. Although the claim against Marriott was originally removed from state court, the plaintiffs' amended complaint in the district court alleged federal question jurisdiction only for the claims against Pan Am, and invoked ancillary and pendent jurisdiction to support the claim against Marriott. There were no allegations in the amended complaint to support the exercise of diversity jurisdiction.

█ Ancillary and pendent jurisdiction refer to the power of a federal court, once it acquires jurisdiction over a case and controversy properly before it, to adjudicate other claims sufficiently closely related to the main claim even though there is no independent basis for subject matter jurisdiction over the related claims. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* §§ 3523, 3567 (1984). Traditionally, ancillary jurisdiction refers to joinder, usually by a party other than the plaintiff, of additional claims and parties added after the plaintiff's claim has been filed. It is mainly a tool for defendants and third parties whose interests would be injured if their jurisdictionally insufficient claims could not be heard in an ongoing action in federal court. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2403–04, 57 L.Ed.2d 274 (1978). Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a fed-

---

**4.** In *Seaboard World Airlines,* however, the issue before the court was not the proper interpretation of a provision in a collective bargaining agreement, but whether the provision itself was illegal. 425 F.2d at 1090.

eral question claim against the same defendant. *See, e.g., United States v. Pioneer Lumber Treating Co.,* 496 F.Supp. 199, 201 (E.D.Wash.1980). The tests for when it is appropriate for a federal court to adjudicate a pendent claim were set forth in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966). "The state and federal claims must derive from a common nucleus of operative fact ... [I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then ... there is power in federal courts to hear the whole." *Id.* at 725, 86 S.Ct. at 1138. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...." *Id.* at 726, 86 S.Ct. at 1139 (footnote omitted).

Since *Gibbs,* federal courts have often permitted a plaintiff presenting a federal claim against one defendant to assert a related state claim against a different defendant. *See, e.g., Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 809–11 (2d Cir.1971); *Astor–Honor, Inc. v. Grosset & Dunlop, Inc.,* 441 F.2d 627 (2d Cir.1971); *see* Fortune, *Pendent Jurisdiction—The Problem of "Pendenting Parties",* 34 U.Pitt.L.Rev. 1 (1972). Such "pendent party" jurisdiction is a hybrid of ancillary and pendent jurisdiction which does not neatly fit the traditional definition of either. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.2. The Supreme Court has twice declined to analyze whether there are any "principled differences" between pendent and ancillary jurisdiction, and, if there are, what effect *Gibbs* had on such differences. *Aldinger v. Howard,* 427 U.S. 1, 13, 96 S.Ct. 2413, 2419–20, 49 L.Ed.2d 276 (1976); *Owen,* 437 U.S. at 370 n. 8, 98 S.Ct. at 2401 n. 8. We find it unnecessary to resolve that open question, however, since this case may be decided solely by reference to *Gibbs* and to traditional notions of pendent jurisdiction.

The plaintiffs have argued that the district court has the power to fashion a federal common law cause of action for tortious interference, and that the claim against Marriott is based on that federal claim. The federal courts do have the power to develop a uniform body of federal law in the process of construing and enforcing collective bargaining agreements covered by § 301, of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). Thus, some federal courts have permitted claims asserting tortious interference with labor contracts governed by the LMRA. *E.g., Local 472, United Ass'n v. Georgia Power Co.,* 684 F.2d 721, 725–26 (11th Cir.1982); *Wilkes–Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372, 379–81 (3d Cir.1981), *cert. denied,* 454 U.S. 1143 (1982). However, under the RLA, which governs this case, there is no comparable power to create federal common law. Implying a federal claim for tortious interference would conflict with the strong policy under the RLA of keeping questions of labor contract interpretation out of the federal courts. There is no authority for creating a federal common law tort for this case and federal common law cannot serve here as a source of federal question jurisdiction.

What remains is the state claim for tortious interference against Marriott. Because a federal claim of tortious interference under the RLA is arguably pleaded and is at least colorable, the state tortious interference claim is pendent to it. The same plaintiffs are pleading against the same defendant (Marriott) state and federal claims arising from a "common nucleus of operative fact" —as *Gibbs* puts it. The question then is whether the district court should, as a matter of discretion, retain jurisdiction over that state claim against Marriott.

The basis for retaining jurisdiction is weak when, as is the case here, the federal claims are dismissed before trial. The Court in *Gibbs* stated that "[c]ertainly, if

the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." While later decisions indicate that dismissal of the state claims is not absolutely mandatory, *Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon University v. Cohill*, —— U.S. ——, —— n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon*, —— U.S. at —— n. 7, 108 S.Ct. at 619 n. 7. *See Independent Bankers Ass'n v. Marine Midland Bank*, 757 F.2d 453, 464 (2d Cir.1985), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986).

▮ In its present posture this suit against Marriott is not one of the rare cases where retaining jurisdiction would be appropriate. At this early stage in the proceedings judicial economy, convenience and fairness do not demand that the federal courts hear this pendent claim. An alternative forum is available to the plaintiffs in the state courts. One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated. *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139–40. However, it is not necessary at this time to reach the question of whether the state-law claim of tortious interference with contractual relationships is preempted by federal labor law. Aside from preemption, the overall balance of factors to be considered in the exercise of judicial discretion weighs against retaining pendent jurisdiction over the action against Marriott.

▮ When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims. *Mine Workers v. Gibbs*, 383

U.S. at 725, 86 S.Ct. at 1138. Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court. *Carnegie–Mellon University v. Cohill*, —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720.

There is an alternative disposition of the case that should also be considered. The jurisdictional situation would be different if the plaintiffs' suit were based on diversity jurisdiction. The plaintiffs originally sued Marriott in the New York State Supreme Court. Marriott removed the action to the federal district court, so diversity probably existed then. However, the plaintiffs then amended their complaint to add federal claims against Pan Am and removed diversity as a basis for jurisdiction. The reasons for giving up diversity jurisdiction are not clear, but it may have been done because there was no diversity between the plaintiffs and the new defendant, Pan Am. With the case against Pan Am dismissed, diversity may again exist between plaintiff and defendant. If on remand plaintiffs are granted leave to amend their complaint to assert diversity jurisdiction, and if the district court determines that diversity exists, the court should permit the case against Marriott to proceed as a diversity action. *Bautista*, 828 F.2d at 552. This could be more economical than remanding the suit to the state court for immediate removal back to the district court.

Accordingly, the plaintiffs' complaint against Marriott is remanded to the district court to determine (if plaintiffs are allowed to and so amend their complaint) whether diversity jurisdiction exists. In that event, the district court should decide anew (or reaffirm its earlier ruling) whether plaintiffs' state claim against Marriott is preempted by federal law. If there is no diversity jurisdiction (or if plaintiffs fail to amend their complaint to allege diversity jurisdiction) the court shall decide whether to dismiss the complaint or to remand it to the state court in conformance with *Carnegie–Mellon*.