**Joan UNDERWOOD, individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**No. 88 Civ. 4369 (PKL).**

United States District Court, S.D. New York.

April 5, 1989.

Hockert and Flamm, Beverly S. Bond, New York City, (Leonard N. Flamm, of counsel), for plaintiff.

Baer, Marks and Upham, New York City (Barry J. Mandel, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff Joan Underwood ("Underwood"), is employed by defendant, Trans World Airlines ("TWA"), as a flight attendant. Plaintiff commenced this action in New York Supreme Court, New York County, on May 23, 1988, alleging that her recent suspension by TWA constitutes a discriminatory employment practice under New York's Human Rights Law ("HRL"). *See* N.Y.Exec.Law § 290 *et seq.* Defendant removed this action to the District Court for the Southern District of New York on June 22, 1988, based on federal question jurisdiction under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

TWA has moved to dismiss plaintiff's claims, pursuant to Fed.R.Civ.P. 12(b)(1), on the grounds that this dispute is within the exclusive jurisdiction of the Adjustment Boards established by the RLA, and that plaintiff has failed to exhaust the remedies afforded her thereunder. Alternatively, defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has cross-moved, pursuant to 28 U.S.C. § 1447, to have the action remanded to state court for lack of subject matter jurisdiction. This action is currently before the Court on these cross-motions.

## I. FACTUAL BACKGROUND

Underwood has been employed as a flight attendant by TWA since October 31, 1966. She is represented by the Independent Federation of Flight Attendants ("IFFA"), the labor union and collective bargaining agent representing flight attendants employed by TWA. TWA maintains certain standards concerning the appearance of their flight attendants in uniform. These standards, contained in the TWA In-Flight Service Manual (the "Manual"), promulgate certain guidelines for a flight attendant's weight as it relates to the attendant's appearance in uniform.[1] *See* In-Flight Service Manual at pp. 9–10, attached as Exhibit A to Defendant's Notice of Motion ("Defendant's Motion"). The Manual further mandates that, only after a TWA supervisor determines that excess weight detracts from a flight attendant's appearance in uniform, should the provisions of the weight program set forth in the Manual be applied.[2] *Id.*

TWA's appearance program enumerates several guidelines to be adhered to by employees, all aimed at ensuring a "competent professional business look" in uniform. *See* Manual at p. 1. While the program does include references to weight, weight is only one of eight "personal grooming basics" deemed to have an impact upon the desired appearance standard. *Id.* at ¶¶ 1–10. The other "grooming basics" which must be adhered to include standards concerning the uniform articles worn, the use of accessories, the permissible type of footwear, and the amount and type of jewelry. Also detailed are several standards governing general personal grooming, including maintenance of good complexion appearance, permitted use of cosmetics, use of nail polish, length and style of hair, and overall visual poise. *See* Manual, pp. 1–10.

On or about September 4, 1987, plaintiff's appearance in a uniform was evaluated by a TWA supervisor, and plaintiff was informed she was overweight and failed to comply with the aforementioned appearance standards. *See* Evaluation Report of

---

1. The Manual states that "[a] Flight Attendant's weight and weight distribution relative to his/her height, frame size and bone structure must result in satisfactory appearance in uniform." Manual at p. 9, ¶ 8.

2. Specifically, the Manual provides that "[a] Flight Attendant shall not be considered for a weight loss program, even if that Flight Attendant exceeds the weight guidelines outlined as follows unless a supervisor determines that excess weight is detracting from the individual Flight Attendant's appearance in uniform." Manual at p. 10, ¶ A.

Mickey Biuso, dated September 4, 1987 ("Biuso Evaluation"), attached as Exhibit G to Defendant's Reply Memorandum.[3] A letter confirming this was placed in Underwood's file. Plaintiff was placed on a "formal weight program" as mandated by the In–Flight Service Manual, and a goal weight of 142 pounds was set.[4] *See* Letter of Mickey Biuso, dated September 8, 1987, attached as Exhibit D to Defendant's Reply Memorandum.

On or about December 14, 1987, a second review of plaintiff's appearance and weight occurred. Once again, plaintiff's appearance in uniform was deemed unsatisfactory by a TWA supervisor, this time Paul Broderick. As a consequence of this meeting, plaintiff was notified that she would be removed from TWA's payroll for thirty days, effective February 7, 1988, should she not reach the goal weight of 142 pounds by that date. *See* Affidavit of Paul Broderick, TWA In–Flight Supervisor, sworn to on October 18, 1988 ("Broderick Aff."), ¶ 6; Affidavit of Joan Underwood, sworn to on September 23, 1988 ("Underwood Aff."), ¶¶ 5 & 6. Underwood alleges that this determination was based solely upon her physical weight and that her overall appearance was not considered at that time. Underwood Aff. ¶ 5.

On or about January 11, 1988, the IFFA filed a grievance with TWA In–Flight Services on Underwood's behalf. The grievance statement charged that TWA's decision to suspend Underwood for thirty days without pay, and the action taken by TWA of placing a disciplinary letter in Underwood's personnel file were "not for just cause."[5] *See* IFFA Letter, dated May 31,

1988, ("IFFA Letter") ¶ 4, attached as Exhibit C to Defendant's Motion.

An initial hearing was held on January 27, 1988, before the general manager of In–Flight Services at TWA.[6] Plaintiff's grievance was denied by TWA. Plaintiff was found to be in noncompliance with the appearance standards of TWA, and it was held that TWA had properly followed the procedures related to the appearance program. As a result of this determination, plaintiff was informed that she would be removed from the payroll, as had been communicated to her previously, should she not meet her goal weight or be approved for removal from the weight program at a higher weight. *See* Letter of Donald Fleming, dated January 29, 1988, attached as Exhibit C to Defendant's Motion.

The initial decision being unsatisfactory to plaintiff, an Appeal Hearing was requested by the IFFA on plaintiff's behalf. An appeal decision was rendered on April 21, 1988. Again, the decision rendered was unsatisfactory to plaintiff, holding that the disciplinary measures taken were warranted. *See* IFFA Letter, ¶ 3.

Subsequently, on or about May 31, 1988, the IFFA submitted the decision to suspend Underwood to arbitration before the Flight Attendant System Board of Adjustment, a three member adjustment board provided for under the terms of the RLA. *Id.* Before receiving any resolution of this dispute through the internal channels established, plaintiff commenced a civil suit in the Supreme Court, New York County, on May 23, 1988, alleging that TWA's weight program violated the New York State Human

---

**3.** Plaintiff is 5'4" tall and weighed 126 pounds when she was hired by TWA in 1966. Plaintiff's weight on September 4, 1987 was 154 pounds. *See* Biuso Evaluation.

**4.** The formal weight program set forth in TWA's In–Flight Manual provides for a "goal weight" to be achieved by the flight attendant. This goal weight is determined by taking the hiring weight and increasing it by twelve percent. However, if the flight attendant is deemed satisfactory in appearance, notwithstanding the fact that her weight exceeds that goal weight, she may be removed from the weight program. *See* Manual at pp. 10–11.

**5.** Several letters concerning plaintiff's noncompliance with TWA's appearance policy were placed in her personnel file. *See* Exhibits D, E, F, G, H, I, attached to Defendant's Motion.

**6.** Plaintiff failed to attend this hearing, and therefore her appearance in uniform was not reviewed at this time. As plaintiff chose not to appear at the hearing, though she was free to do so, the In–Flight Supervisor based his decision upon the December 14th review of her appearance in uniform. Broderick Aff. ¶¶ 8, 10 & 11.

Rights Law. The action was subsequently removed on June 22, 1988, to this Court.

Plaintiff now moves to have the action remanded to the Supreme Court, New York County, pursuant to 28 U.S.C. § 1447, alleging that this Court lacks subject matter jurisdiction. TWA contends that this Court has subject matter jurisdiction of the action, based on a federal question, since the RLA governs the action. TWA further argues that the dispute is within the sole jurisdiction of the Adjustment Boards established by the RLA and that the action must therefore be dismissed. Lastly, TWA contends that, even if the RLA does not completely preempt plaintiff's state claim, the claim must nevertheless be dismissed, as plaintiff is not a member of a protected class under the HRL.

## II. DISCUSSION

### A. *Motion to Remand*

Plaintiff asserts that her claim was improperly removed as this Court lacks subject matter jurisdiction. Plaintiff asserts that, as the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, arises solely as a defense, the "well-pleaded complaint" rule requires remand to the state court.

■ Under the "well-pleaded complaint" rule, the existence of federal question jurisdiction must be determined solely on the basis of plaintiff's complaint, without regard to the anticipated defenses that a defendant may thereafter interpose. *See, e.g., Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914); *West 14th Street Commercial Corp. v. 5 West 14th Street Owners, Corp.,* 815 F.2d 188, 192 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

■ It is undisputed that no federal question appears on the face of plaintiff's complaint, which solely alleges violations of New York's Human Rights Law. *See* N.Y. Exec.Law, § 290 *et seq.* However, the courts have created an exception to the well-pleaded complaint rule where the area of state law is one which has been completely preempted by federal law. *See,*

*e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In other words, any claim purportedly based upon preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.* Defendant contends that the RLA completely preempts the New York HRL, and that therefore this case falls within the above described exception to the well-pleaded complaint rule.

The Railway Labor Act was intended by Congress to promote stability in labor-management relations in the railroad and airline industries by providing effective and efficient remedies for the resolution of employee disputes without resort to the courts. *See Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 95, 99 S.Ct. 399, 403, 58 L.Ed.2d 354 (1978), *rehearing den.,* 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979). Unlike the National Labor Relations Act ("NLRA"), courts interpreting the Railway Labor Act have typically found much broader preemption under the RLA, given the mandatory grievance procedures set up by the RLA for the resolution of disputes. *See, e.g., Peterson v. Air Line Pilot's Association, Intern.,* 759 F.2d 1161, 1169 (4th Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) ("Unlike preemption under the NLRA, the preemption of state law claims under the RLA has been more complete"); *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 856 (D.Md. 1981) (common-law tort preempted by RLA since holding otherwise "would thwart the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry without resort to the courts"). The preemptive force intended by the enactment of the RLA applies to the New York HRL.

■ As a general rule, the RLA preempts state law claims when the action is substantially dependent upon analysis of the terms of a collective bargaining agreement made between the parties to the action. *See McCall v. C. & O. Railway Co.,* 844 F.2d 294, 300 (6th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d

166 (1988). Underwood asserts that her claim is independent of the collective bargaining agreement, however, in so far as it is based upon violations of New York's statute prohibiting discriminatory employment practices. Generally, state statutes which establish rights independent of those under a collective bargaining agreement, are not necessarily preempted even if they do relate to the terms of the agreement in some way. *See, e.g., Allis–Chalmers v. Lueck,* 471 U.S. 202, 212–213, 105 S.Ct. 1904, 1911–1912, 85 L.Ed.2d 206 (1985); *Colorado Anti–Discrimination Commission v. Continental Air Lines,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963).

■ Although the existence of a relationship between rights regulated by the state and the collective bargaining agreement is not in itself enough to mandate preemption, the strong similarity between the inquiry that an Adjustment Board would have to make and that made by a jury in a state cause of action requires that the claim under the HRL be preempted in this case. The Adjustment Board and the jury would essentially have to make the same decision—whether TWA's appearance program is a discriminatory employment practice and thus whether the disciplinary actions taken against plaintiff were proper. Clearly the state action must be preempted since it is "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.." *McCall, supra* at 301 (*quoting Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.1978), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)).

■ The Court recognizes, however, that the preemptive force of the RLA is not all-encompassing. Certain state regulations of discrimination based upon status (*i.e.,* race, religion, national origin, handicap) have been held to protect independent substantive rights arising under state law notwithstanding the remedies required by the RLA. *See, e.g., Colorado Anti–Discrimination Commission v. Continental Air Lines,* 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (state statute prohibiting racial discrimination in employment not

preempted by RLA). In other words, "[a]n employer cannot simply hide behind the arbitration provisions of a collective bargaining agreement to bypass his or her employee's statutory right not to be discriminated against." *McCall, supra* at 300. Therefore, in order to avoid the preemptive force of the RLA, plaintiff would have to show that she was being deprived of one of her guaranteed substantive rights protected by a state anti-discrimination statute, here the New York HRL. While plaintiff has attempted to make this showing, she has failed to prove that she is within the class of persons protected by New York's Human Rights Law. As discussed below, plaintiff has failed to state any handicap discrimination claim under the HRL and therefore this action falls within the complete preemption doctrine.

Plaintiff contends that TWA's weight program violates the HRL both on its face and as applied to plaintiff individually. Section 296 of N.Y.Exec.Law (the HRL) provides in relevant part that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of disability ... to refuse to hire or to bar or to discharge from employment such individual or to discriminate against such individual...."

The term "disability" has been defined to include physical, mental or medical impairments, resulting from anatomical, physiological or neurological conditions. In addition, to qualify as a disability, the condition may manifest itself in one of two ways: 1) by preventing the exercise of a normal bodily function, or 2) by being "demonstrable by medically accepted clinical or laboratory diagnostic techniques." *See State Div. of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 491 N.Y.S.2d 106, 109, 480 N.E.2d 695, 698 (1985); N.Y.Exec.Law § 292(21). The definition also includes conditions "regarded by others as such an impairment". N.Y.Exec.Law § 292(21) (McKinney's Supp.1989). Fairly read, this covers conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity.

The term "disability" in the HRL has been defined to include persons "clinically diagnosed" as having the "disease of active gross obesity".[7] *Xerox, supra* at 107–109, 480 N.E.2d at 696–698. Plaintiff claims, without authority, that being "overweight" is also a covered disability within the meaning of the statute. Complaint ¶ 1. However, the inclusion of "obesity" as a disability has been closely circumscribed and does not extend to persons in plaintiff's position.

The *Xerox* court found that since the plaintiff's obese condition, "was clinically diagnosed and found to render her medically unsuitable," it could constitute an impairment and therefore a disability within the contemplation of the statute. *Xerox, supra* at 109, 480 N.E.2d at 698. Clearly, the difference between "obesity" and "overweight" is not merely one of semantics. In the present case, Underwood does not allege that her condition amounts to "obesity" or that her suspension is a result of discrimination based upon "obesity". Nor does she allege that defendant regards her as having such condition. Plaintiff has never been "clinically observed" as having any "abnormal medical condition." Nor does plaintiff allege that any bodily function has been impaired by her being mildly overweight. Thus, plaintiff cannot be said to fall within any class of persons protected by the HRL.[8]

7. Plaintiff in *Xerox* weighed 249 pounds and was 5′6″ tall. Furthermore, plaintiff's condition was clinically diagnosed by defendant's own physician as "gross obesity", an abnormality.

8. Since plaintiff is not within the class of persons protected by the HRL, she has no standing to contest TWA's appearance policy. "[I]t is not enough that the conduct of which plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected" *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982) (emphasis in original). Therefore, plaintiff has no standing to allege that TWA's appearance policy constitutes a *per se* violation of the HRL. *See, e.g., Jane B. v. New York City Dept. of Social Services,* 117 F.R.D. 64 (S.D.N.Y.1988).

9. TWA and IFFA were both parties to a collective bargaining agreement which expired in July, 1984. Since that time, the parties have been attempting to negotiate a new contract,

Given the underlying Congressional purpose in enacting the RLA, combined with the mandatory grievance procedures established for the handling of complaints like that of plaintiff, plaintiff's state action is clearly preempted by the RLA. Therefore this Court has subject matter jurisdiction and plaintiff's motion to remand must be denied.

**B.** *Motion to Dismiss*

Defendant has moved to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b), on the grounds that plaintiff's claim is within the exclusive jurisdiction of the RLA Adjustment Boards.

It is undisputed that TWA is a common carrier by air within the meaning of 45 U.S.C. §§ 151 and 181. Plaintiff admits that she is an employee of TWA, and a member of the IFFA. Both TWA and IFFA are parties to a collective bargaining agreement regulating rates of pay, rules and working conditions.[9]

Labor disputes in the airline industry are governed by the RLA. 45 U.S.C. § 181. The federal act was intended to serve the interests of railroad employees by creating a statutory scheme providing for the final settlement of grievances by a tribunal composed of people experienced in the railroad and airline industries. *See Union Pacific R.R. Co. v. Price,* 360 U.S. 601, 614, 79

and have, at all times relevant to the action, honored that agreement for the handling and adjustment of employee grievances. Plaintiff admits that there is an agreement between TWA and IFFA for the handling of grievances, however claims that the agreement is "undisclosed" and "informal." However, the RLA provides for maintenance of the "status quo" when changes in a collective bargaining agreement are being sought. *See* 45 U.S.C. § 156. Accordingly, the provisions of the expired collective bargaining agreement remain in effect until a new agreement is effected. Moreover, plaintiff herself authorized the IFFA as her representative to implement a grievance on her behalf, and the authorization she signed specifically stated that "[t]his grievance is filed in accordance with the Agreement between IFFA and Trans World Airlines." *See* Affidavit of Diane Croll, Staff Vice-President of In-Flight Services Administration, sworn to on August 29, 1988, ¶ 4, and exhibit C.

S.Ct. 1351, 1358, 3 L.Ed.2d 1460 (1959). The RLA, unlike the National Labor Relations Act which covers other industries,[10] mandates the establishment of arbitration panels called "Adjustment Boards." These Adjustment Boards are composed of members selected by the air carriers and by the labor organizations representing the employees. 45 U.S.C. §§ 153, 184–185. These arbitration procedures are mandatory. *See, e.g., Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 322–324, 92 S.Ct. 1562, 1564–1565, 32 L.Ed.2d 95 (1972); *Baylis v. Marriott Corp.*, 843 F.2d 658, 662 (2d Cir.1988). The only alternative to the Adjustment Board is voluntary binding arbitration using arbitrators chosen by the parties. *See* 45 U.S.C. §§ 157–159; *Baylis v. Marriott Corp., supra* at 662.

The congressional purpose in setting up these procedures under the RLA was to keep these disputes "within the Adjustment Board and out of the courts." *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). If plaintiff could litigate her claim on the merits before this Court, rather than present the exact same issues to the Adjustment Board created specifically for this purpose, the salutary purposes of the RLA would be completely frustrated.

This exclusive jurisdiction of the Adjustment Board extends to disputes between air carriers and their employees "growing out of grievances or out of interpretation or application of agreements concerning rates of pay, rules, or working conditions...." 45 U.S.C. § 184; *Baylis, supra* at 662–663. Such disputes have been termed "minor disputes" to distinguish them from "major disputes". *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945); *Baylis, supra* at 663; *Air Cargo, Inc. v. Local Union 851, Int'l Board of Teamsters*, 733 F.2d 241, 245 (2d Cir.1984). "Major" disputes concern the "formation of collective [bargaining] agreements or efforts to secure them." *Elgin,*

*supra* 325 U.S. at 723, 65 S.Ct. at 1290. They involve formation or alteration of agreements, and therefore deal with the acquisition of or change in prospective rights of employees. Thus, "major disputes" usually concern large issues over which strikes ordinarily arise. *See Local 553, Transport Workers v. Eastern Air Lines*, 695 F.2d 668, 674 (2d Cir.1984). Furthermore, "if the question of whether a dispute is 'major' or 'minor' is close, it should be viewed as being 'minor' unless the carrier's contractual justification is 'obviously insubstantial' and the contract is not 'reasonably susceptible' to the carrier's interpretation." *Baylis, supra* at 663 (*quoting Local 553, supra* at 673).

Plaintiff's claim in this instance is clearly a "minor dispute" as contemplated by the RLA, and thus within the exclusive jurisdiction of the Adjustment Board. Given the existence of this exclusive jurisdiction, courts may not adjudicate the merits of these "minor disputes." *See Local 553*, 695 F.2d at 675. The grievance in issue in the present case involves the determination of whether Underwood's noncompliance with TWA's appearance standards justifies her disciplinary suspension under the procedures that TWA follows, or whether these procedures themselves are valid. The dispute in no way concerns efforts to secure a collective bargaining agreement, nor does it contest the formation of the agreement or its terms. Thus it cannot be defined as a "major dispute."

Rather, the grievances in issue require interpretation of the "just cause" provision of the collective bargaining agreement, as it is related to the disciplinary actions taken by TWA. Clearly this is a challenge by plaintiff to the collective bargaining procedures concerning enforcement of company rules, and therefore a "minor dispute" within the purview of the RLA. Plaintiff must pursue her grievance through the channels established by the RLA.

As previously noted, plaintiff has already had a complaint filed on her behalf in this

---

10. The Court notes that plaintiff relies heavily upon cases interpreting the National Labor Relations Act for support of several of her arguments. However, the present case clearly arises under the RLA and there is abundant case authority interpreting the relevant provisions of the Act. *See, e.g., McCall, supra; Andrews, supra.* Therefore, as the NLRA does not cover the airline industry, decisions interpreting its provisions are not instructive in the case at bar.

dispute, before a three member Adjustment Board. The dispute remains pending before the Board, and a final decision has yet to be made. *See* Croll Aff. ¶ 7. Moreover, while the final decision of the Board is "final and binding upon both parties to the dispute," the decision is subject to limited judicial review. *See* 45 U.S.C. § 153.

As the RLA completely preempts plaintiff's claims, and plaintiff has failed to exhaust the procedures mandated by the RLA, this Court does not yet have sufficient bases to grant the relief sought herein. Thus, in the present procedural posture, plaintiff's complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### CONCLUSION

For the foregoing reasons, plaintiff's motion to remand pursuant to 28 U.S.C. § 1447 is denied. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b) is granted.

SO ORDERED.