James MARCHITTO, et al., Plaintiffs,

v.

Hazel KNAPP, et al., Defendants.

Civ. No. 3:92–19 (TFGD).

United States District Court,
D. Connecticut.

Jan. 11, 1993.

William Eustace, New Haven, CT, for plaintiffs.

Wendi Doolittle, Derby, CT, for defendants.

DALY, District Judge.

After careful review and over objection, Magistrate Judge Smith's Recommended Ruling is hereby APPROVED, AFFIRMED and ADOPTED.

SO ORDERED.

RULING ON DEFENDANTS'
MOTION TO DISMISS

SMITH, United States Magistrate Judge.

The plaintiffs, James Marchitto and several other residents of Derby, Connecticut, originally brought this action in Connecticut Superior Court against the defendants, Hazel Knapp, Republican Registrar of Voters for Derby, and John Kowarik, Republican Town Chairman for Derby, claiming that Conn.Gen.Stat. § 9–60, on its face and as applied to the plaintiffs, violated plaintiffs' rights to freedom of association and due process under the First and Fourteenth Amendments to the United States Constitution. The complaint also alleged that defendants' actions in removing the plaintiffs from the Republican Enrollment List violated the Connecticut General Statutes and the Connecticut Constitution.

Pursuant to 28 U.S.C. § 1441, this action was removed to federal district court. On March 13, 1992, the court granted plaintiffs' motion for a preliminary injunction, ordering the defendants to restore plaintiffs' names to the Republican Enrollment List.[1] Defendants now move to dismiss plaintiffs' complaint.

*Discussion*

In both their motion and supporting memorandum, the defendants have failed to identify for the court the particular federal rule pursuant to which they seek dismissal of plaintiffs' complaint. Because defendants' motion to dismiss attacks the legal sufficiency of plaintiffs' constitutional claims, this court will construe it as a Fed.

---

1. The court granted plaintiff's motion for a preliminary injunction absent objection by the defendants. In their memorandum of law in support of the motion to dismiss, the defendants' claim neither they nor their attorney ever received a copy of the court's order.

R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.

Under Fed.R.Civ.P. 12(b)(6), the test courts ordinarily apply in ruling on a motion to dismiss is whether the complaint, viewed in a light most favorable to the plaintiff and with the allegations taken as true, establishes a valid claim for relief. *MacKenzie v. International Union of Operating Engineers,* 472 F.Supp. 1025 (5th Cir.1979). The party moving to dismiss bears the burden of showing that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of their claim which would entitle them to relief." *Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir.1991), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The issue presently before the court is whether Conn.Gen.Stat. § 9–60, either on its face or as applied to the plaintiffs, violates plaintiffs' rights to freedom of association and due process. Viewing plaintiffs' claims in the light most favorable to the plaintiffs and taking the allegations contained in the complaint as true, the defendants have satisfied their burden of showing that the complaint should be dismissed.

It is well-established that the freedom of political association is a fundamental right protected by the First and Fourteenth Amendments. *See Burdick v. Takushi,* —— U.S. ——, ——, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 214, 107 S.Ct. 544, 548–49, 93 L.Ed.2d 514 (1986); *Kusper v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 307–08, 38 L.Ed.2d 260 (1973). However, "[n]either the right to associate nor the right to participate in political activities is absolute ..." *United States C. Serv. Com'n. v. National Ass'n of Let. Car.,* 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796. As the instant case demonstrates, individual voters and political parties share a reciprocal right to define themselves politically. On the one hand, political parties enjoy the freedom to associate. *Tashjian,* 479 U.S. at 214, 107 S.Ct. at 548. At the same time "the right to associate with the party of one's choice is an integral part of this basic constitutional freedom." *Pontikes,* 414 U.S. at 57, 94 S.Ct. at 307.

Because a party's right to freely associate "necessarily presupposes the freedom to identify the people who constitute the association," *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981) and "plainly presupposes a freedom not to associate," *Roberts v. United States Jaycees,* 468 U.S. 609, 623, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984), a party may limit its membership to those who share the party's interests and support its principles. It follows, therefore, that a political party may deny membership to an individual voter who acts in a manner clearly inconsistent with a party's interests. *See Democratic Party of United States v. Wisconsin ex rel. LaFollette, supra.* Conn.Gen.Stat. § 9–60 provides political parties with the ability to do precisely that.

Although the plaintiffs claim—and the defendants apparently concede—that Connecticut's party disaffiliation statute must pass strict judicial review to survive, our case law does not so hold. Contrary to plaintiffs' assertion, not every law that imposes a burden on the right to vote or on political association must be subject to strict scrutiny. *Burdick v. Takushi,* —— U.S. ——, ——, 112 S.Ct. 2059, 2062–63, 119 L.Ed.2d 245 (1992). Instead, the U.S. Supreme Court has adopted a flexible approach whereby the rigorousness of "inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.,* —— U.S. at ——, 112 S.Ct. at 2063. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.,* —— U.S. at

——, 112 S.Ct. at 2063–64, *quoting Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

In the case at bar, the court finds that Con.Gen.Stat. § 9–60 is constitutional on its face. "The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I. § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections." *Takushi,* —— U.S. at ——, 112 S.Ct. at 2063, *citing Sugarman v. Dougall,* 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).

Conn.Gen.Stat. § 9–60 authorizes the registrar of voters of any political party to remove a voter's name from a party's enrollment list upon a showing that the voter does not support the party's principles or candidates. As such, § 9–60 is a valid exercise of Connecticut's "legitimate interest in protecting party members' associational rights by legislating to protect the party from intrusion by those with adverse political principles." *Ray v. Blair,* 343 U.S. 214, 221–22, 72 S.Ct. 654, 657–58, 96 L.Ed. 894 (1952). While it is true that all State "election laws will invariably impose some burden upon individual voters," requiring that each and every state election law "be narrowly tailored to advance a compelling state interest ... would tie the hands of states seeking to assure that elections are operated equitably and efficiently." *Takushi,* —— U.S. at ——, 112 S.Ct. at 2063.

Section 9–60 imposes reasonable nondiscriminatory restrictions on individual voters. Under § 9–60, individual voters—party members and nonmembers alike—are guaranteed the right to associate with the political party of their choice, subject to the requirement that the individual be affiliated with the party or be a good faith member of the party who intends to support the party's principles and candidates. Connecticut's party disaffiliation statute serves important regulatory interests—protecting political parties against intrusion by individuals with interests adverse to those of the party—which justify any restrictions placed upon the plaintiffs' First and Fourteenth Amendment rights.

Turning to plaintiffs' claim that § 9–60 is unconstitutional as applied, the court concludes that viewing the allegations of the complaint in the light most favorable to the plaintiffs, the defendants did not violate plaintiffs' right to political association or due process by removing their names from the Republican Party's enrollment list. The plaintiffs' complaint alleges that plaintiffs':

names were unjustly and improperly removed from the enrollment list of the Republican Party for a period of two years by defendants, pursuant to the provisions of C.G.S. Section 9–60, because plaintiffs' names appeared on the ballot label for City of Derby elections held on November 5, 1991 only under a party designation known as Derby Coalition Party, which is other than that of the Republican Party with which they were enrolled.

(Plaintiffs' Complaint, ¶ 8).

Although defendants' decision to remove the plaintiffs from the Republican Enrollment List may have been based upon several additional factors cited in defendants' memorandum of law, this allegation in and of itself is sufficient to warrant dismissal of the plaintiffs' complaint.

In *Nader v. Schaffer,* 417 F.Supp. 837 (D.Conn.1976), a three judge court upheld the constitutionality of the Connecticut General Statutes governing party primaries. Relying on the U.S. Supreme Court's decision in *Ray v. Blair* (upholding Alabama Democratic Party's requirement that Democratic candidates sign a party loyalty pledge as a condition of Party membership), *supra,* the Court in *Nader* acknowledged that "the language and reasoning of the Courts opinion [in *Ray v. Blair*] imply the validity of a similar requirement binding members of a party to vote only for a party member as the party's candidate ..."

417 F.Supp. at 846. If, as *Nader* suggests, a party may require its members to vote exclusively for that party's members as its candidates, it should likewise be able to prevent a party member from running as a candidate against that party's candidate.

In any event, neither the courts nor the state may substitute its own judgment for that of the party. *Democratic Party of United States v. Wisconsin ex rel LaFollette,* 450 U.S. at 123–24, 101 S.Ct. at 1019–20. Given the Republican Party's right to define its political association and to remove those members whose interests directly conflict with those of the Party, this court is loathe to second guess defendants' decision. Simply put, the facts alleged by the plaintiff provide ample support for defendants' conclusion that the plaintiffs no longer shared the interests and principles of the Derby Republican Party. Accordingly, Count four of the plaintiffs' Complaint should be dismissed.

The remainder of plaintiffs' complaint alleges violation of the Connecticut General Statutes and the Connecticut Constitution. Having dismissed plaintiffs' federal claims, this court lacks jurisdiction to hear plaintiffs' remaining pendent state law claims. *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988). Because this action was previously removed from Superior Court for the State of Connecticut, plaintiffs' state law claims should be remanded to that court.

Either party is free to object to this decision pursuant to 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges. Failure to object is a timely fashion may preclude further review. *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 30th day of October, 1992.