**AIR CARGO INC., Plaintiff-Appellant,**

v.

**LOCAL UNION 851, INTERNATIONAL BROTHERHOOD OF TEAMSTERS ("LOCAL 851"); Mark Davidoff, as Secretary-Treasurer of Local 851 and as Union Member of Local 851 Joint Grievance Settlement Board ("JGSB"); Michael Hunt, as President of Local 851, and as Union Member of JGSB; Joseph Konzelman, as Employer Member of JGSB; Judy Bernstein, as Alternate Employer Member of JGSB; and George Ehrlinger, as Alternate Employer Member of JGSB, Defendants-Appellees.**

No. 438, Docket 83–7603.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1983.

Decided April 26, 1984.

Herbert Prashker, New York City (Carmel P. Ebb, Poletti Freidin Prashker & Gartner, New York City, of counsel), for plaintiff-appellant.

Stephen H. Kahn, New York City, for defendants-appellees Local Union 851, Davidoff and Hunt.

Kreitzman & Mortensen, New York City, for defendants-appellees Konzelman and Ehrlinger.

Ronald S. Platt, New York City, for defendant-appellee Judy Bernstein.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, Costantino, J., dismissing Air Cargo Inc.'s complaint seeking injunctive relief based on Local Union 851's alleged violation of the status quo provisions of Railway Labor Act § 6, 45 U.S.C. § 156 (1976), and based on actions which Air Cargo claims were intended as illegal economic coercion. We reverse and remand.

## BACKGROUND

Appellant Air Cargo Inc. (ACI) is wholly owned by approximately thirty United States airlines and is subject to the provisions of the Railway Labor Act (RLA or Act). RLA §§ 201–02, 45 U.S.C. §§ 181–82 (1976). It provides trucking and other services involved in transporting air freight to those airlines. Appellee Local 851 was the recognized representative of ACI's office and clerical workers, customer service employees and drivers [1] from about 1972 until March 2, 1983. It represents only the drivers at this time.

On August 31, 1979, ACI and Local 851 entered into separate three year agreements for the drivers and the clerical employees. The drivers' agreement included the following provisions:

Employees time worked shall be computed from time required to report at the garage or terminal and to the time of return to the same garage or terminal. Employees shall not work overtime, or on a sixth (6th) or seventh (7th) day during any period when employees covered by this agreement are laid off.

. . . .

Guaranteed work force ... In the event of a lay-off being effected ... during the period of such lay-off there shall be no overtime, sixth or seventh day work assignments ....

J.App. at 9, 19–20 (Master Agreement §§ 2(C), 7(E)). Prior to the August 31, 1982 expiration of the agreement, both parties served on each other notices of intended changes in the collective bargaining agreement. Local 851 proposed to retain the above provisions, while ACI proposed to delete them and to add a provision that Local 851 employees were required to perform overtime and holiday work. At the time of the expiration of the agreement, ACI was assigning sixth and seventh day (weekend) and overtime work even though

---

**1.** The drivers' agreement covered "all truck drivers, helpers, switchers, platform men, motor lift truck operators, mechanics, garage employees and fuelers, and such other employees as may be presently or hereafter represented by the Union within the jurisdiction of the Union." J.App. at 10 (Master Agreement § 3(A)).

there had evidently been layoffs prior to August 31, *see* J.App. at 331, all in contravention of the terms of the agreement. It was also directing some employees to clock in and out at airline terminals rather than at ACI's terminal, which was also contrary to the provisions of the agreement.

On December 21, 1982, an application was filed on behalf of Local 851 with the National Mediation Board seeking Mediation Board certification of Local 851 as the representative of ACI's office/clerical, customer service and fleet service employees (drivers). The Mediation Board separately docketed the representation applications for each of the three classes.

ACI laid off three drivers on February 4, 1983. It asserts that it did so because it had hired three drivers on December 2, 1982 as a result of a threatened work stoppage, and because it wanted to return the number of drivers to that existing on August 31, 1982. Despite these layoffs, it assigned weekend and overtime work. It also directed some drivers to clock in and out at airline terminals, as it had been doing on August 31.

On March 1, 1983, the National Mediation Board dismissed the representation petition for the office/clerical and customer service employees, at which time ACI withdrew its recognition of Local 851 as the representative of those employees.[2]

Subsequently, Local 851 sued in district court to enjoin ACI from withdrawing recognition of its representation of the clerical and customer service workers. On March 18 the district court denied the injunction. Immediately after the district court's decision, Local 851 ordered its employees not to perform any more weekend or overtime work and to clock in and out only at the ACI terminal. ACI responded by adding to a previously filed complaint against Local 851 (unrelated to this appeal) two causes of action alleging that Local 851 was violating its obligations under the RLA to maintain the August 31, 1982 "status quo" by ordering its drivers not to perform weekend and

overtime work and to report only to the ACI terminal (fourth cause of action) and that Local 851's actions were intended to coerce ACI into resuming recognition of Local 851 as the representative of the office/clerical and customer service employees (fifth cause of action). *See* J.App. at 205, 216–17, 219, 224. It sought an injunction requiring Local 851 to cease directing its employees to (1) refuse weekend and overtime work, and (2) begin and end their work shifts only at the ACI terminal instead of where they were directed by ACI.

The district court denied the injunctions sought in ACI's fourth and fifth causes of action on the ground that the controversies involved "minor disputes" within the meaning of the Act. It dismissed the two causes of action and ordered them adjudicated by the System Board of Adjustment, an arbitration board established pursuant to the Act for the settlement of "minor disputes." On July 6, the System Board held that the practice of requiring employees to clock in and out at airline terminals was a long-standing practice and a "matter of 'status quo.'" It thus refused the union a cease and desist order. It also held, however, that the practice of weekend and overtime work on August 31, 1982 was only "applicable to the specific circumstances then present" and was not part of the "statutory status quo," and that the contract did not unambiguously support ACI's position that such work could be assigned during layoff periods. It thus denied ACI's claims for damages for loss of business.

ACI filed its appeal from the dismissal of the fourth and fifth causes of action on July 5, 1983. It asserts that the district court, and not the System Board, was obliged to try those claims on the merits.

## DISCUSSION

This case concerns the interpretation of the Railway Labor Act, the provisions of which are applicable to ACI because it is an organization performing work for air carri-

---

**2.** The Mediation Board ordered a representation election for the drivers' class. Local 851 won this election and was certified as the drivers' representative on April 19.

ers. RLA §§ 201–02, 45 U.S.C. §§ 181–82 (1976). The Act must be read in light of its general purposes. These include "avoid[ing] any interruption to commerce or to the operation of any carrier engaged therein" and "provid[ing] for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." RLA § 2, 45 U.S.C. § 151a(1), (4) (1976).

■ The provisions of the RLA provide separate procedures for settling major and minor contractual disputes. "Major disputes" are those involving the formation of collective bargaining agreements or changes in the terms of existing agreements. They relate to "the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945).[3] "Minor disputes" involve the application of particular provisions of an agreement that are not the subject of a proposal for change. They relate to rights already accrued rather than to proposals for future rights.[4] The procedures for resolving major disputes involve a long, drawn out process involving negotiation and mediation by the National Mediation Board during which parties to the dispute are obligated to maintain the status quo. *Detroit & Toledo Shore Line Railroad v. United Transportation Union*, 396 U.S. 142, 148–51, 90 S.Ct. 294, 298–99, 24 L.Ed.2d 325 (1969). *See* RLA §§ 2 First, 4, 5 First, 6, 10, 45 U.S.C. §§ 152 First, 154, 155 First, 156, 160 (1976). "Minor dis-

putes" in the airline industry, by contrast, are resolved by mandatory grievance arbitration procedures before the System Board of Adjustment. RLA § 204, 45 U.S.C. § 184 (1976); *see Andrews v. Louisville & Nashville Railroad*, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972) (citations omitted).

■ The status quo requirements applicable in major disputes are contained in section 6 of the Act, 45 U.S.C. § 156 (1976), which provides in pertinent part:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions [also known as "Section 6 Notices"].... In every case where such notice of intended change has been given ... rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon ... by the [National] Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

The status quo requirements in section 6 apply to carriers and employee representatives alike. *Shore Line*, 396 U.S. at 152–53, 90 S.Ct. at 300–01.

■ The disputes over weekend and overtime work during layoffs and place of reporting to work began with section 6 notices proposing changes in the collective bargaining agreement affecting working

---

**3.** The terms "major dispute" and "minor dispute" do not exist in the RLA. They were first used in *Elgin* to describe, respectively, disputes that must go through the drawn out procedures of conference and mediation and for which there are status quo requirements, and disputes that go to an arbitration board under section 3 of the Act (or under section 204 for air carriers). *See Local 553, Transport Workers Union v. Eastern Air Lines, Inc.*, 695 F.2d 668, 673 (2d Cir. 1982).

**4.** Because it is sometimes difficult to determine whether a dispute is "major" or "minor" under the *Elgin* standards, courts have sometimes used other criteria to distinguish the two types of

disputes. *See Local 553, Transport Workers Union v. Eastern Air Lines, Inc.*, 695 F.2d at 673–74. In this case, however, ACI was clearly proposing to change employees' future rights by changing the agreement. We have no trouble classifying this as a major dispute either under *Elgin* or under the wording of section 6 of the RLA, 45 U.S.C. § 156 (on which *Elgin* relied). *See also Switchmen's Union v. Southern Pacific Co.*, 398 F.2d 443, 447 (9th Cir.1968) (dispute is major, even if couched in terms of a disagreement as to contract interpretation, if the change being imposed on one side by the other is "in nowise contemplated or arguably covered by the agreement").

**246**

conditions and are thus "major disputes." Therefore, the section 6 provisions are applicable to these disputes. ACI's proposed agreement of August 1982 did not include the provisions of the previous agreement that no overtime or sixth or seventh day work would be assigned during periods of layoff and that employees would report only to ACI's terminal. *See* J.App. at 9, 19–20 (Master Agreement §§ 2(C), 7(E)); ACI Section 6 Notice Submissions, Exhibit D, at 2, 6 (omission of same from ACI's new agreement proposal). This constituted notice of an intended change in agreements affecting working conditions under section 6 triggering a major dispute. The parties were still bargaining over these items as of March 18, 1983. *See* ACI Section 6 Notice Submissions, Exhibit J, §§ 2(C), 7(E) (union's April 20, 1983 proposal including old provisions). The status quo provisions of section 6, which were triggered by ACI's section 6 notice, were thus in effect on March 18. The district court properly held that the status quo that the parties were obligated to maintain consisted of the conditions that existed at the expiration of the previous agreement on August 31, 1982. J.App. at 155.

ACI contends that Local 851 violated its status quo obligations to allow drivers to perform sixth and seventh day and overtime work during a layoff period and to report to airline terminals as they were doing on August 31, 1982. Br. for Appellant at 45; *see also* J.App. at 331. Local 851 argues that there was no violation of the status quo. It contends that its employees were adhering to the terms of the drivers' agreement and that the agreement itself, not the "snapshot" of conditions on August 31, constitutes the status quo. Br. for Appellees at 38–40. The drivers' agreement clearly stated that no sixth or seventh day or overtime work was to be performed during layoff periods and that employees would report to the "garage or terminal." J.App. at 9, 19–20 (Master Agreement §§ 2(C), 7(E)).

■ Local 851 incorrectly interprets existing law. "[T]he status quo extends to those actual, objective working conditions out of which the dispute arose, and clearly these conditions need not be covered in an existing agreement." *Shore Line*, 396 U.S. at 153, 90 S.Ct. at 301. Instead, the parties are obligated during a major dispute to "maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute." *Id.* (footnote omitted).

■ The objective working conditions on the actual date of the agreement's expiration, however, do not always constitute the statutory status quo. Otherwise, a party could take any action it wanted on the last day of an agreement and call that the status quo. Instead, there must be a "mutual understanding, either express or implied" to turn a party's behavior into the RLA section 6 status quo. *See United Transportation Union, Local Lodge No. 31 v. St. Paul Union Depot Co.*, 434 F.2d 220, 222 (8th Cir.1970), *cert. denied*, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); *cf. Baker v. United Transportation Union*, 455 F.2d 149, 156 (3d Cir.1971) ("[W]hen the railroad has engaged in certain activity over a sufficient period of time for the union to become aware of it ... such past activity by the railroad absent objection by the union can become part of the actual status quo."). If the parties have agreed to practices different than those specified in the collective bargaining agreement, or if actual behavior has been acquiesced to by the other party, *see Shore Line*, 396 U.S. at 154, 90 S.Ct. at 301, the actual practices may constitute the status quo.

■ The System Board of Adjustment has exclusive jurisdiction in cases of minor disputes. *Ruby v. TACA International Airlines, S.A.*, 439 F.2d 1359, 1362 (5th Cir.1971). But no statutory jurisdiction has been accorded to the System Board in cases of major disputes, including disputes over proposed changes in working conditions, and the System Board thus cannot have any jurisdiction to determine the parties'

obligations during such disputes.[5] As a result, while the major dispute procedures of section 6 are being carried out, the district court has exclusive jurisdiction to ensure that the status quo is being maintained. It therefore has exclusive jurisdiction to determine what the status quo is.

For these reasons, the district court erred in dismissing ACI's fourth cause of action and ordering it adjudicated by the System Board of Adjustment. It also erred in dismissing the fifth cause of action, over which it also had exclusive jurisdiction because the same alleged union directives were involved. We must remand the case to the district court for further consideration of the propriety of equitable relief.[6]

On remand, the district court will have to determine the statutory status quo, *i.e.*, whether assignment of weekend and overtime work during layoff periods or requiring some employees to report to airline terminals rises to the level of a "mutual understanding, either express or implied" that would make this behavior part of the statutory status quo, and then decide whether there has been a violation thereof. Should the court determine that the actual agreement and not the parties' behavior as of August 31 constituted the statutory status quo, it will have to decide whether March 18 was actually a period of layoff

requiring ACI not to assign weekend and overtime work. If it was not, then the union's directive would be violative of the statutory status quo because it would conflict with the contractual rights ACI was exercising on August 31.

If the court concludes that the union was not violating the August 31, 1982 status quo, the district court may still issue an injunction if it finds that a party is not making an effort to settle disputes without interruption to commerce. RLA Section 2 First, 45 U.S.C. § 152 First (1976), states that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle *all* disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute ...." (emphasis added). The duty extends to both parties here and may be enforced by injunction. *Chicago & North Western Railway v. United Transportation Union*, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971); *see Long Island Rail Road v. System Federation No. 156*, 289 F.Supp. 119, 125 (E.D.N.Y.1968) (injunction could issue irrespective of whether dispute over union slowdown in response to new

---

**5.** Local 851 alleges that ACI had previously claimed that the disputes in question were minor. Thus, it argues that ACI cannot now claim that the disputes were major because "ACI should be estopped from advancing a legal theory on appeal which is directly contrary to that which it advanced at trial." Br. for Appellees at 32. Because this is a question of subject matter jurisdiction under the RLA, we need not consider Local 851's claim. Exclusivity of federal question jurisdiction, like all other questions of subject matter jurisdiction, may be raised by anyone at any time or may be decided by a federal court *sua sponte*. *See, e.g., Mansfield, Coldwater & Lake Michigan Railway v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

**6.** Our decision in this case will not make it easier for parties to circumvent the System Board of Adjustment simply by the way they frame the dispute in question. If one party has served a section 6 notice indicating a desire to change a collective bargaining agreement, it is

still for the district court to determine whether the dispute in question is actually over a proposed change in rates of pay, rules or working conditions, and is therefore major. Courts will not rely on the labels parties place on their disputes or other "contentions" or "maneuvers" of the parties, *see Rutland Railway v. Brotherhood of Locomotive Engineers*, 307 F.2d 21, 33 (2d Cir.1962), *cert. denied*, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963), and will not take jurisdiction unless the section 6 notice represents a "bona fide effort to change the collective agreement." *See Airline Flight Attendants in the Service of Texas International Airlines, Inc. v. Texas International Airlines, Inc.*, 411 F.Supp. 954, 961 (S.D.Tex.1976), *aff'd mem.*, 566 F.2d 104 (5th Cir.1978). In this case, however, ACI clearly was attempting to change the agreement with regard to working conditions, and its delivery of a section 6 notice to the union therefore triggered a major dispute.

company workweek was major or minor in order to effectuate purposes of RLA). Depending on whether the district court finds that the union's actions were designed to coerce ACI into recognizing the union as representative of the clerical employees, *see Summit Airlines, Inc. v. Teamsters Local Union No. 295*, 628 F.2d 787, 795 (2d Cir.1980), or was for any other reason violative of section 2 First, it may or may not grant an injunction without regard to whether the dispute was major or minor or what the status quo was.[7]

We do not address any questions that pertain to the propriety of the injunctive relief against ACI, as this appeal does not concern any injunctions requested by the union.

Finally, because ACI has sought equitable relief, the district court should take into account the traditional factors that go into a determination of whether equitable relief is appropriate.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion. Paragraphs (1) and (2) of the award of the System Board of Adjustment, which denied relief based on its findings regarding the section 6 "status quo," are vacated.

---

**7.** The two cases cited by the parties support appellant. ACI has met the prerequisites for a court hearing spelled out in *International Ass'n of Machinists v. Northwest Airlines, Inc.*, 673 F.2d 700, 710 (3d Cir.1982), by setting forth a verified complaint and supplemental affidavit describing specific facts that support its allegation of coercion by Local 851. J.App. at 205, 216–19. *Brotherhood of Railroad Trainmen v. Central of Georgia Railway*, 305 F.2d 605 (5th Cir.1962), supports ACI's claim that the district court has jurisdiction over its fifth cause of action, as it is based on the proposition that district court jurisdiction may be based on a pleading alleging coercion.