**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA AFL/CIO (AIRLINE DIVISION),**

**and**

**Local 732, Airline and Aerospace Employees, affiliated with International Brotherhood of Teamsters, Plaintiffs,**

**v.**

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

**No. CV–89–0490.**

United States District Court, E.D. New York.

June 27, 1989.

---

Roland P. Wilder, Jr., George Wiszynski, Baptiste & Wilder, P.C., Washington, D.C., Herbert K. Lippman, New York City, for plaintiffs.

Joseph R. Knock, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

This labor dispute arises under the Railway Labor Act (RLA). 45 U.S.C. §§ 151 et seq. Plaintiffs, a labor union and its affiliated local, allege that the defendant airline has violated mandatory provisions of the RLA in failing to: 1) print and distribute copies of the labor agreements now in

force between the parties and 2) produce information about employee compensation that would be useful in negotiations for a new contract. They seek a declaratory judgment and injunction.

The parties cross move for summary judgment and other relief. For the reasons stated below, the complaint is dismissed.

The result should not suggest approval of either side's position in the real world outside the courtroom. The parties appear to be spoiling for a fight. What should have been resolved in a healthy relationship of respect and forbearance between management and labor where each sought amicably to resolve non-vital procedural differences has been transformed into a sullen battle over minor legal rights. The court lacks power to order the parties to act sensibly. The public pays the price for this kind of intransigence.

## I. Facts

The Airline Division of the International Brotherhood of Teamsters (Union) is the collective bargaining representative certified under the RLA to represent three crafts, or classes, of workers employed by defendant Pan American World Airways (Pan Am). These classes—totaling some 5,000 Pan Am employees—are clerical employees, service employees and nurses. Local 732 is an affiliate of the Union and represents Pan Am's East Coast employees on the Union's behalf.

In 1978 the Union and Pan Am entered into collective bargaining agreements (the Basic Agreements) covering clerical, service and nursing employees. A separate Basic Agreement was entered into on behalf of each employment class. The Basic Agreements established grievance procedures and, as required by the RLA, also established boards of adjustment with jurisdiction over disputes regarding the interpretation or application of the collective bargaining agreements. 45 U.S.C. § 184.

In 1980, 1981 and 1983 the Basic Agreements were modified in various respects by mutual agreement of the parties. Following a final 30 day "cooling off" period required by section 5 of the RLA, in February 1988, as permitted under the Act, Pan Am unilaterally implemented changes in rates of pay, rules and working conditions. 45 U.S.C. § 155. As a result of the successive modifications, the employment relationship currently governing Pan Am and its clerical, service and nursing employees is comprised of the 1978 Basic Agreements as modified by the 1980, 1981 and 1983 amendments and the 1988 terms.

The 1978 Basic Agreements contained provisions obligating Pan Am to print copies of the agreements and distribute them to Union employees. This obligation was not modified. It is a current term of the employment relationship.

At the time it imposed the unilateral modifications, Pan Am sent a letter to the Union describing the changes. It sent copies to all affected employees.

The Union has asked Pan Am to produce, print and distribute integrated documents setting forth the present terms of employment between Pan Am and its clerical, service and nursing employees, reflecting all modifications and amendments to the 1978 Basic Agreements. Without contending that both sides are not fully aware of the present pay, rules and working conditions, the Union insists that the contracts entitle it to new integrated documents to be delivered to all its members.

Pan Am's refusal to produce any integrated documents is the basis of Count I of the complaint. It is asserted that this position constitutes a violation of the RLA's prohibition against changing "the rates of pay, rules, or working conditions" of employees. RLA § 2, Seventh; 45 U.S.C. § 152, Seventh. That section of the Act forbids such changes unless the elaborate procedures contained in section 6 of the Act have first been complied with. *See* 45 U.S.C. § 156. The provisions obligating Pan Am to print and distribute the agreement were never submitted to these procedures.

To assist it in the collective bargaining negotiations that are currently taking place, the Union has also requested that Pan Am produce information about non-Un-

ion employees, including pay and pension contributions. Although the 1978 Basic Agreements contained provisions obligating Pan Am to provide the Union with seniority, dues and payroll data regarding the Union-represented employees, no provisions required—nor do any now require— Pan Am to produce this additional information. Without denying that the data could assist the Union in negotiating new. collective bargaining agreements, Pan Am has stood on its claimed legal right to decline production of this information.

Pan Am's refusal forms the basis of Count II of the complaint. The Union alleges that the additional information is necessary for effective collective bargaining and that Pan Am's failure to produce the information is a violation of the statutory duty imposed by section 2, First, of the RLA "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise...." 45 U.S.C. § 152, First.

II.  Law Applied to the Facts

  A.  *Count I—Failure to Print and Distribute the Agreements:*

Disputes between an airline carrier and its employees concerning terms of employment are governed by the provisions of the Railway Labor Act. *See* 45 U.S.C. § 184. The RLA provides two separate and distinct dispute resolution schemes. The nature of the dispute determines which of these two schemes is to be followed in a particular case. Because under one scheme jurisdiction to hear disputes rests exclusively with boards of adjustment, a critical threshold issue is which dispute resolution scheme governs Pan Am's failure to print and distribute copies of the present terms of employment.

█ One of the RLA's dispute resolution schemes applies to "major disputes." *See Elgin, Joliet & Eastern R.R. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). "Major disputes are those involving the formation of collective bargaining agreements or changes in the terms of existing agreements. They relate to the 'acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.'" *Air Cargo, Inc. v. Local Union 851, Int'l Brotherhood of Teamsters,* 733 F.2d 241, 245 (2d Cir.1984) (quoting *Elgin, Joliet & Eastern R.R. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945)). An attempt by a party to a collective bargaining agreement to unilaterally impose changes in the agreement without having first complied with procedures mandated by the RLA gives rise to a major dispute. The Act provides an elaborate mechanism for resolving major disputes; district courts have jurisdiction over these disputes to ensure that the status quo is maintained. *Local 553, Transport Workers v. Eastern Air Lines,* 695 F.2d 668, 674 (2d Cir.1982) (citing cases).

█ Another dispute resolution scheme is used for "minor disputes." *See Elgin, Joliet & Eastern R.R. v. Burley,* 325 U.S. at 723, 65 S.Ct. at 1290. Minor disputes are those "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." 45 U.S.C. § 184. They "involve the application of particular provisions of an agreement that are not the subject of a proposal for change [and] relate to rights already accrued rather than to proposals for future rights." *Air Cargo, Inc. v. Local Union 851. Int'l Brotherhood of Teamsters,* 733 F.2d at 245. Under the RLA, the exclusive remedy for resolving minor disputes lies with the boards of adjustment established under the Act. *See* 45 U.S.C. § 184. Except in unusual circumstances, a district court has no jurisdiction over minor disputes. *Slocum v. Delaware, L. & W.R. Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); *Baylis v. Marriott Corp.,* 843 F.2d 658, 662-63 (2d Cir.1988).

█ For minor disputes there is generally no requirement that the status quo be maintained. A party is free to act in accordance with its own interpretation of the disputed contractual provision pending res-

olution of the dispute by the board of adjustment. *See CSX Transp., Inc. v. United Transp. Union*, 879 F.2d 990, 997 (2d Cir.1989) (citing cases).

■ The disposition of Count I of the plaintiffs' complaint thus turns on whether plaintiffs' claim is a major dispute or a minor one. If it is a major dispute, this court may weigh the merits of the claim and, if warranted to preserve the status quo between the parties, require Pan Am to produce the integrated documents sought by plaintiffs. If, however, the dispute is a minor one, this court as a general matter has no jurisdiction to consider the merits of the dispute and plaintiffs' sole remedy lies with the boards of adjustment.

The claim for integrated documents bears all the indicia of a minor dispute. Because the provisions to print and distribute the labor agreements were contained in the Basic Agreements entered into in 1978 and it is these provisions upon which plaintiffs rely, the plaintiffs are here "asserting rights which they contend have vested in the past." *Baylis v. Marriott Corp.*, 843 F.2d at 663. The essence of the dispute concerns the scope of Pan Am's obligation to print and distribute copies of the labor agreements—an obligation created by provisions in the Basic Agreements.

Resolution of this printing dispute would require "interpretation or application of agreements concerning rates of pay, rules or working conditions." 45 U.S.C. § 184. As pointed out below, under the RLA's statutory scheme such tasks are consigned to the exclusive jurisdiction of boards of adjustment.

■ What would otherwise be a minor dispute because it implicates already existing rights and the interpretation of particular contractual provisions will be considered a major dispute if the employer's justification for the disputed action is "obviously insubstantial." *Local 553, Transport Workers v. Eastern Air Lines*, 695 F.2d 668, 673 (2d Cir.1982). A contractual interpretation that is plainly unsupported by a fair reading of the provisions in question warrants the inference that it is a pretext for " 'circumvent[ing] the procedures prescribed by [the RLA] for alteration of existing agreements.' " *CSX Transp. Inc. v. United Transp. Union*, 879 F.2d at 998 (quoting *Southern Ry. v. Brotherhood of Locomotive Firemen*, 384 F.2d 323, 327 (D.C.Cir.1967)). To avoid undermining the dispute resolution mechanisms of the RLA, in such circumstances the dispute is considered a major one and the disputed action may be enjoined.

■ The Union asserts that the justifications advanced by Pan Am in support of its refusal to produce the integrated documents are "obviously insubstantial." Thus, argues the Union, the dispute is in fact a major one and injunctive relief to preserve the status quo may be granted.

To decide whether Pan Am's justifications are "obviously insubstantial" requires an examination of the disputed provisions. *CSX Transp., Inc. v. United Transp. Union*, 879 F.2d at 997, 998; *Local 553, Transport Workers v. Eastern Air Lines*, 695 F.2d at 673. If "a plausible interpretation would justify the carrier's action" or the provision "is 'reasonably susceptible' to the carrier's interpretation," the dispute is a minor one. *Local 553*, 695 F.2d at 673; *see also CSX Transp.*, at 997. "[P]rior practice between the parties ... may be considered" in the inquiry. *CSX Transp.*, at 998 (footnote and citations omitted).

The pertinent provision in the 1978 Basic Agreement covering clerical workers provides:

This Agreement shall be printed within a reasonable time by the Company in a Union print shop, and each employee coming within its scope shall be entitled to a copy upon request; the Union shall also receive a reasonable number of copies.

The equivalent service employees' agreement states:

The Company will provide a printed copy of the Agreement to employees upon request within a reasonable time subsequent to notification of ratification by the Union.

The nursing employees' analogue reads:

The Company shall print copies of this Agreement and shall give a copy upon

request to each employee and to each new employee hired in the classification covered by this Agreement.

While they differ somewhat in language, each of the provisions seems susceptible of an identical interpretation. The operative language is essentially the same.

Pan Am offers various justifications for its refusal to produce the integrated documents sought by plaintiffs. Some rise above the "obvious implausibility" level. Pan Am's burden is a "relatively light" one. *CSX Transp., Inc. v. United Transp. Union,* 879 F.2d at 999. While there is undeniably an obligation to print the 1978 agreements (one we assume was honored more than a decade ago), Pan Am argues that this obligation does not extend to later modifications. In support of this position, Pan Am points to the failure of plaintiffs in the past to request any integrated documents when the 1980, 1981 and 1983 amendments were adopted. Pan Am also suggests that any obligation it may have to reproduce and distribute the agreements was satisfied by its 1988 letter to Union employees summarizing the unilateral changes implemented by Pan Am.

The Union argues that even if Pan Am's interpretation is plausible, this is nonetheless a major dispute because "the number of employees seriously affected and the degree of effect upon the rest of the membership should be weighed in determining the nature of the dispute." *Local 553, Transport Workers v. Eastern Air Lines,* 695 F.2d at 676 n. 8. According to the Union, the successive modifications to the 1978 contracts, coupled with Pan Am's failure to produce integrated documents clearly setting out the present contractual rights and obligations of the parties, has produced a situation in which Union employees do not know or fully understand what rights they currently enjoy. As a result, says the Union, employees are unable to assert their rights, contract violations are not being reported, and rights are thus being lost.

While the number of employees affected and the degree of harm may be considered in determining whether a dispute is major or minor, it is necessary to do so only in close cases, "[w]hen it is difficult to determine whether the agreement between the parties 'arguably supports' the carrier's actions...." *Airline Pilots Assoc., Int'l v. Trans World Airlines,* 713 F.2d 940, 949 (2d Cir.1983), *aff'd in part and rev'd on other grounds in part sub nom. Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). "When there is a 'clearly governing provision in the ... agreements,' [the] inquiry need not range beyond the interpretation of the language of the agreement." *Id.* at 948 (quoting *Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers,* 307 F.2d 21, 34 (2d Cir.1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963)).

In the present dispute, the print and distribute provisions of the Basic Agreements concededly govern, and resolution of the dispute turns on the interpretation of these provisions. This is not a case where "it is difficult to determine whether the agreement between the parties 'arguably supports' the carrier's actions...." *Airline Pilots Assoc., Int'l v. Trans World Airlines,* 713 F.2d at 949.

According to the Union, the failure of Pan Am to produce integrated documents has resulted in confusion among some employees over the precise extent of contract rights in such areas as "wages, holidays, sick leave, vacations, shift premiums, grievance procedure, job bidding, transfers between jobs or shifts, and layoff and recall." The absence of integrated documents may contribute to the difficulties the Union describes. Nonetheless, Pan Am's refusal to produce the documents does not involve the large scale layoffs, relocations, or other major changes in substantive working conditions that present a danger of precipitating the sort of labor strife which the major dispute provisions of the RLA were designed to prevent. Mere confusion on the part of some employees over the precise delineation of some contractual rights is not enough to turn this dispute into a major one.

■ Lastly, the Union contends that even if the present dispute is a minor one, injunctive relief is permitted. For injunctive relief to be warranted when the dispute is minor, the carrier's action must threaten "injury so irreparable that decision of the Board [of Adjustment] in the union's favor would be but an empty victory." *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R.R. Co.*, 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960); *see also Airline Pilots Assoc., Int'l v. Trans World Airlines*, 713 F.2d at 949; *Local 553, Transport Workers v. Eastern Air Lines*, 695 F.2d at 675; *Westchester Lodge 2186 v. Railway Express Co.*, 329 F.2d 748, 753 (2d Cir. 1964). The theory underlying the grant of injunctive relief in such cases is that intervention by a federal court does not threaten the jurisdiction of the board of adjustment, but rather operates to support it by preserving the dispute while the RLA's minor dispute resolution procedures are pending.

Delay in the production of integrated documents pending a decision by the boards of adjustment does not threaten to turn a decision in the Union's favor into an "empty victory." To the extent that integrated documents would dispel any confusion about contract rights, a favorable decision would provide substantive relief.

An injunction such as the one sought here to preserve a board of adjustment's jurisdiction over a minor dispute would need to be premised on the pendency of the dispute before the board. The "extraordinary relief of an injunction should be withheld" when a minor dispute is involved until the agency has had "the first opportunity to pass on the issue." *Order of Ry. Conductors v. Pitney*, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946); *see also Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R.R. Co.*, 363 U.S. at 529–30, 80 S.Ct. at 1327–28 (dispute was pending before adjustment board when injunctive relief was granted); *Westchester Lodge 2186 v. Railway Express Co.*, 329 F.2d at 753 ("If a minor dispute is not pending before the Adjustment Board, the District Court has no power to grant injunctive relief."); *CSX Transp., Inc. v. United Transp. Union*, 879 F.2d at 1004 n. 10 (minor dispute injunctions "to preserve the status quo pending the resolution of the arbitration before the adjustment board").

The Union has yet to submit the present dispute to the appropriate boards of adjustment. It is premature to consider a grant of injunctive relief aimed at preserving a board of adjustment's jurisdiction when that jurisdiction has yet to be invoked.

Apart from statutory limitations, discretionary considerations and general equitable policy argue against an injunction. There is no indication that the lack of integrated documents so threatens the employment relationships between the parties that immediate production should be ordered. The plaintiffs' own actions are instructive. They made no request for integrated documents until after the implementation of the fourth and most recent employment changes, and they have yet to invoke the minor dispute procedures of the RLA with regard to the present dispute. Moreover, the present lawsuit was not begun until almost a year after Pan Am's initial refusal to produce the integrated documents. Extraordinary relief is not warranted.

Plaintiffs' claim concerning Pan Am's failure to provide integrated documents setting forth the present terms of employment involves a minor dispute under the Railway Labor Act. This court is without jurisdiction to consider the claim. Plaintiffs' motion for summary judgment on this claim is denied. The claim is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

B. *Second Claim—Production of Information:*

■ For their claim seeking production of certain employee-related information, plaintiffs do not rely on the provisions of any prior agreement. Instead they assert that an obligation to supply the requested information can be found in the "reasonable effort" bargaining provision of the Railway Labor Act itself.

Section 2 of the RLA requires unions and carriers

> to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise....

45 U.S.C. § 152, First. The duty described in section 2 is more than hortatory. It gives rise to an obligation that is legally enforceable in federal courts. *Chicago & N.W. Ry. Co. v. United Transp. Union,* 402 U.S. 570, 577–79, 91 S.Ct. 1731, 1735–36, 29 L.Ed.2d 187 (1971). The Union asserts that the information it seeks is necessary for it to negotiate effectively in the collective bargaining talks that are now underway. Thus, contends the Union, by refusing to supply the requested information Pan Am has failed its legal obligation to "exert every reasonable effort to make and maintain agreements."

By its terms, neither section 2 nor any other section of the RLA requires a carrier to produce the information that the Union seeks. Language nearly identical to that in section 2, First of the RLA appears, however, in section 204(a)(1) of the National Labor Relations Act (NRLA), 29 U.S.C. § 174(a). That section provides in relevant part:

> [E]mployers and employees and their representatives, in any industry affecting commerce, shall ... exert every reasonable effort to make and maintain agreements concerning rates of pay, hours, and working conditions....

This provision, read in conjunction with section 8(a)(5) & (d) of the NLRA, 29 U.S.C. § 158(a)(5) & (d), which directs parties to "confer in good faith," form the statutory basis for the power under the NLRA to require bargaining in good faith. Under the NLRA employers must provide relevant information to unions during contract discussions. *See, e.g., NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967) (arbitrator's decision as to relevancy is not prerequisite to employer's duty to provide information); *NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 152–53, 76 S.Ct. 753, 755–56, 100 L.Ed. 1027 (1956) (employer violated duty to bargain in good faith by not providing information to substantiate its claimed inability to pay).

Because the employer here is an airline, the present dispute is governed by the RLA rather than the NRLA. Only a few courts have considered whether the RLA creates an obligation to disclose information. Among them no clear consensus exists. Rejecting an argument identical to that advanced by plaintiffs here, the Ninth Circuit recently decided that section 2 did not require a carrier to disclose relevant financial information to substantiate the need for lay-offs. *Pacific Fruit Express v. Union Pacific,* 826 F.2d 920 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988). Subsequently, in *Independent Fed'n of Flight Attend. v. Trans World Airlines,* 682 F.Supp. 1003 (W.D. Mo.1988), *notice of appeal filed* January 15, 1989, No. 88–1984WM, 8th Cir., the district court rejected *Pacific Fruit* 's conclusions and held that there was a duty to supply relevant financial information, at least where court intervention in the form of compelled disclosure would not be overly intrusive in the bargaining process. *Id.* at 1021. More recently, in *USAir, Inc. v. National Mediation Bd.,* 711 F.Supp. 285, 297 (E.D.Va.1989), a district court endorsed the *Pacific Fruit* analysis in dicta; it ultimately based its decision not to order production of the requested information on other grounds.

Recently the Supreme Court has reiterated yet again a warning to courts against automatic reliance upon NLRA precedents in construing the RLA:

> Although we have observed that the NLRA may provide useful analogies for interpreting the RLA, we have also emphasized that the NLRA "cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly with due regard for the many differences between the statutory schemes."

*Trans World Airlines v. Independent Fed'n of Flight Attend.,* —— U.S. ——, 109

S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989) (quoting *Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969)). Moreover, the Court has specifically noted that "parallels between the duty to bargain in good faith [under the NLRA] and the duty to exert every reasonable effort [under the RLA] ... should be drawn with the utmost care...." *Chicago & N.W. Ry. v. United States*, 402 U.S. 570, 579 n. 11, 91 S.Ct. 1731, 1736 n. 11.

The language of section 204(a) of the NLRA does closely parallel that of section 2, First of the RLA. The duty to "exert every reasonable effort to make and maintain agreements" is not, however, the sole description of the duty imposed upon the parties to collective bargaining by the NRLA. As noted above, section 8(d) of the NLRA, 29 U.S.C. § 158(d), requires parties when bargaining collectively to "confer in good faith." It is this command, a term of art whose contours have evolved through numerous judicial interpretations, which illuminates the generalized duty to exert reasonable efforts under the NLRA and provides the foundation for the broad obligation to disclose relevant information that has been found in that Act.

No comparable command exists in the RLA. Without it, there is insufficient warrant to fashion a similarly broad obligation under the RLA. The duty to exert every reasonable effort under the RLA remains a generalized one. Rather than developing broad rules in connection with this duty, the Supreme Court has directed that violations are to be remedied by "whatever appropriate means might be developed on a case-by-case basis." *Chicago & N.W. Ry. v. United States*, 402 U.S. at 577, 91 S.Ct. at 1735 (emphasis added).

Other differences in the statutory schemes support this conclusion. As noted by the court in *Pacific Fruit*, the NRLA created an administrative body—the National Labor Relations Board—whose jurisdiction includes resolution of disputes over disclosure issues. *Pacific Fruit Express v. Union Pacific*, 826 F.2d at 923 (citing *NLRB v. Associated Gen'l Contractors*, 633 F.2d 766, 770 (9th Cir.1980), *cert. denied*, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981)). The role of the courts is limited to reviewing NLRB disclosure decisions under a deferential standard. No comparable body exists in the RLA's statutory scheme. Thus, because an obligation to disclose information arising out of section 2, First of the RLA would be a legally enforceable one, *see Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. at 577, 91 S.Ct. at 1735, the lack of any mandatory administrative body such as the NLRB would permit a party with a disclosure dispute to proceed—as plaintiffs here have done—directly to court to compel the production of information.

Such a heightened judicial role in the collective bargaining process is at odds with the general statutory scheme of the RLA. A basic purpose of the Act was to encourage resort to non-judicial processes such as negotiation, mediation and arbitration for the settlement of labor disputes. *Brotherhood of R.R. Trainmen v. Toledo P. & W. R.R.*, 321 U.S. 50, 58, 64 S.Ct. 413, 417–18, 88 L.Ed. 534 (1944). As the Court put the matter in *TWA v. Independent Fed'n of Flight Attend.*, 109 S.Ct. at 1234:

> The RLA provides an exhaustively detailed procedural framework "to facilitate the voluntary settlement of major disputes." The effectiveness of these private dispute resolution procedures depends on the initial assurance that ... *neither party will be able to enlist the courts to further its own partisan ends.* [citations omitted, emphasis added.]

Moreover, the court went on to observe that:

> the availability of self-help measures rather than judicial remedies "may increase the effectiveness of the RLA in settling major disputes by creating an incentive for the parties to settle prior to exhaustion of the statutory procedures."

*TWA v. Independent Fed'n of Flight Attend.*, 109 S.Ct. at 1234 (quoting *Burlington Northern R. Co. v. Maintenance of Way Employees*, 481 U.S. 429, 451–52, 107 S.Ct. 1841, 1854, 95 L.Ed.2d 381 (1987)).

In framing the RLA, Congress carefully limited the ability of carriers and unions to resort to litigation. *Switchmen's Union of North America v. National Mediation Bd.*, 320 U.S. 297, 302, 64 S.Ct. 95, 97–98, 88 L.Ed. 61 (1943). A court must contemplate any expansion of its role with the greatest reluctance.

The decision in *Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 91 S.Ct. 1731, permitted a somewhat enlarged judicial role by concluding that the duty "to exert every reasonable effort to make and maintain agreements" under the RLA was legally enforceable. Availability of the remedy was carefully limited by the Supreme Court to cases in which one party's actions indicated a basic desire to reach no agreement at all. *Id.* at 578, 91 S.Ct. at 1736. Even then, the Court warned:

> great circumspection should be used in going beyond cases involving "desire not to reach an agreement," for doing so risks infringement of the strong federal labor policy against governmental interference with the substantive terms of collective bargaining agreements.

*Id.* at 579 n. 11, 91 S.Ct. at 1736 n. 11.

In view of the differing statutory schemes and the express admonitions of the Supreme Court, it would be inappropriate in the circumstances of the case to find that section 2, First of the RLA creates a broad legally enforceable obligation on the part of a carrier to provide a union with all the information that may be useful in collective bargaining negotiations. *Cf. Independent Union of Flight Attend. v. Pan American World Airways*, 789 F.2d 139, 141 n. 2 (2d Cir.1986) (declining to construe RLA "with reference to broader judicially cognizable rights created by the Labor Management Relations Act"). The obligation to provide information that is a component of the NLRA's duty to bargain in good faith in an insufficient basis upon which to conclude that a comparable obligation exists under the RLA.

One way to accommodate disclosure concerns under the RLA would be, as the court suggested in *US Air v. National Mediation Bd.*, 711 F.Supp. 285 (E.D.Va.

1989), "to let the parties bargain about the disclosure of this information as they bargain about other aspects of the employer-employee relationship." *US Air*, at 297. This in fact was the course taken by Pan Am and the Union when they negotiated the disclosure provisions in the original Basic Agreements. If the Union is unhappy with the bargain that was struck, it must, under the Act, seek to renegotiate those provisions.

Arguably, under *Chicago & N.W. Ry. Co.*, Pan Am's refusal to supply more data would be a violation of its duty under the Act "to exert every reasonable effort to make and maintain agreements," if it evinced a basic desire on the part of Pan Am to reach no agreement at all. There is no indication that Pan Am's refusal to provide the requested information is motivated by a desire to stymie agreement. Pan Am asserts that some of the information sought is confidential and that none of it is needed in negotiations. This contention has some support in the fact that, as contended by Pan Am, none of the other unions whose members are employed by Pan Am requested this information before entering into collective bargaining agreements. Simply because Pan Am opposes the Union's request does not compel the conclusion that Pan Am is attempting to avoid its obligations under section 2, First "to exert every reasonable effort."

■ Because Pan Am's failure to produce the information sought by the Union does not violate the Railway Labor Act, it is not necessary to address the confidentiality and statute of limitations arguments raised by Pan Am. The court expresses no opinion on the merits of these arguments beyond noting that they are not so implausible as to give rise to the suspicion that they are merely pretexts advanced by Pan Am to avoid its obligation under section 2, First of the RLA.

III.  Conclusion

Nothing said in this opinion implies that the court supports the negotiating position of the Union in seeking information and documents or of Pan Am in refusing the

Union's demands. Reasonable people could readily resolve these collateral disagreements before proceeding to negotiation of the substantive issues that separate the parties. The court lacks power to compel the litigants to be reasonable.

Plaintiffs' motion for summary judgment is denied. Defendant's motion to dismiss Count I of the complaint is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Defendant's motion for summary judgment on Count II of the complaint is granted pursuant to Rule 56 of the Federal Rules. The complaint is dismissed. No fees or disbursements are granted.

SO ORDERED.