**AIR LINE PILOTS ASSOCIATION, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**Civ. A. No. 89–1667.**

United States District Court, District of Columbia.

Dec. 22, 1989.

---

Gary Green, Jerry D. Anker, Washington, D.C., for plaintiff.

Elliott H. Shaller, Mary K. Qualiana, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

In this labor dispute, defendant has moved for judgment on the pleadings or alternatively for summary judgment. Plaintiff has cross-moved for summary judgment, and the motions have been fully briefed. No material facts are disputed.

The plaintiff union ("ALPA") seeks access to the terms of the defendant airline's ("TWA") "attendance control policy" pursuant to which union members have been disciplined or threatened with disciplinary action.

ALPA asserts that this policy is pertinent to collective bargaining and that TWA is obligated to disclose the policy by Section 2, First of the Railway Labor Act ("RLA"), 45 U.S.C. § 152, First. That section requires unions and employers to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes, whether arising out of the appli-

cation of such agreements or otherwise...."

The issue of TWA's attendance policy is presently in arbitration before the System Board of Adjustment. Under the RLA, disputes arising from grievances or the interpretation of a collective bargaining agreement concerning rates of pay, rules or working conditions are "minor disputes" subject to compulsory arbitration before a Board of Adjustment, which has exclusive jurisdiction over the dispute. 45 U.S.C. § 184. *See Consolidated Rail Corp. v. Railway Labor Executives Ass'n,* — U.S. —, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Board of Adjustment decisions are binding and final, subject to review only on specific, narrow grounds. 45 U.S.C. § 153 First (q). *See Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

After ALPA filed this action, the arbitrator in this dispute issued a subpoena for the production of TWA documents concerning its attendance control program. TWA produced what it describes as "the program itself" but refused to turn over a document it describes as "containing the confidential internal management guidelines which trigger review by pilots' supervisors of their attendance records." The arbitrator, after examining the disputed document *in camera* and receiving TWA's pledge that it would not rely on the policy to justify its disciplinary action, declined to order TWA to disclose it.

TWA argues that because the attendance policy issue is presently in arbitration, the basic issue facing the Court is whether the Court has jurisdiction to compel discovery in an ongoing arbitration.

ALPA counters, contending that TWA's obligation to disclose the policy is not dependent upon ongoing arbitration but rather is independently justified under the previously quoted "every reasonable effort" language of RLA Section 2, First. ALPA relies in part on cases arising under the National Labor Relations Act ("NLRA"), in which parties have been ordered to disclose information relevant to their collective bar-

gaining agreements. *See NLRB v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967).

Two courts have rejected this argument advanced by ALPA, *Pacific Fruit Express v. Union Pacific Railroad Co.*, 826 F.2d 920 (9th Cir.1987), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988); *Teamsters v. Pan American World Airways, Inc.*, 716 F.Supp. 726 (E.D.N.Y. 1989); another has leaned against it, *USAir, Inc. v. National Mediation Board*, 711 F.Supp. 285 (E.D.Va.1989); while another has leaned toward it. *Independent Fed'n of Flight Attendants v. Trans World Airlines*, 682 F.Supp. 1003 (W.D. Mo.1988), *aff'd*, 878 F.2d 254 (8th Cir.1989).

Although the NLRA contains a provision, 29 U.S.C. § 174(a), nearly identical to the "every reasonable effort" provision of the RLA, it also contains a provision not mirrored in the RLA requiring parties to "confer in good faith" with respect to labor agreements. This additional requirement has been held to "[provide] the foundation for the broad obligation to disclose" under the NLRA, and "[n]o comparable command exists in the RLA." *Teamsters v. Pan American*, 716 F.Supp. at 734.

Moreover, the Supreme Court has cautioned that the NLRA "cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly with due regard for the many differences between the statutory schemes." *Trans World Airlines v. Independent Fed'n of Flight Attendants*, — U.S. ——, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989), *quoting Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969). Indeed, the Supreme Court has reiterated these words of caution with specific reference to prior efforts to analogize the NLRA's duty to "confer in good faith" with the RLA's duty to "exert every reasonable effort." *Chicago & N.W. Ry. Co. v. United Transportation Union*, 402 U.S. 570, 579 n. 11, 91 S.Ct. 1731, 1736 n. 11, 29 L.Ed.2d 187 (1971).

Accordingly, this Court adopts and will follow the Ninth Circuit's conclusion that "the extensive judicial intervention that court-ordered disclosure would require is inconsistent with the history and principles of the Railway Labor Act." *Pacific Fruit*, 826 F.2d at 923. *See Chicago & N.W. Ry.*, 402 U.S. at 584–93, 91 S.Ct. at 1739–43 (Brennan, J., dissenting).

Prior opinions on this issue have also noted that disclosure disputes under the NLRA are handled by a quasi-judicial panel, the National Labor Relations Board, and no comparable mandatory administrative body exists for RLA disputes. *Pacific Fruit*, 826 F.2d at 923; *Teamsters v. Pan American*, 716 F.Supp. at 734. If federal courts create and seek to enforce a duty to disclose, they will be placed in the untenable position of supervising arbitration discovery disputes and become enmeshed in a process that Congress intended to be left in other hands.

This Court's docket is presently crowded with suits for injunctive relief brought by carriers and unions, who seem increasingly anxious to turn to the judiciary to work out the details of their labor disputes. Congress did not so intend. Judicial control of document production would not only be greatly intrusive, it would also tie up unions and carriers in court when their efforts should be focused, as the RLA provides, on the collective bargaining process. Judicial restraint is particularly appropriate where, as here, the object of the litigation is already a subject of ongoing arbitration.

Accordingly, TWA's motion for summary judgment is granted, ALPA's cross-motion for summary judgment is denied, and the complaint is dismissed.