Tzonka **BAKALOVA, M.D.,**
**Plaintiff–Appellant,**

v.

**MAIMONIDES MEDICAL CENTER, Ketan Shevde, M.D., individually and in his official capacity, and Bimal Massand, M.D., individually and in his official capacity, Defendants–Appellees.**

No. 02–9078.

United States Court of Appeals,
Second Circuit.

Dec. 12, 2003.

A. Kathleen Tomlinson and Steven N. Davi, Farrell Fritz, P.C., Uniondale.NY; Lawrence Solotoff, Solotoff & Solotoff, Great Neck, NY, for Plaintiff–Appellant.

David H. Diamond, Frederic C. Leffler, Stephen J. Malone, Proskauer Rose LLP, New York, NY, for Defendants–Appellees.

Present: POOLER, SACK, and WESLEY, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Tzonka Bakalova, M.D. appeals from the Opinion and Order, dated August 5, 2002, of the United States District Court for the Eastern District of New York (Ross, J.), granting defendants' motion for summary judgment pursuant to Fed. R. Civ. Pro. 56 as to Bakalova's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and declining to exercise jurisdiction over Bakalova's state law claims.

### I.

This is a sexual harassment case. Dr. Tzonka Bakalova became a resident in anesthesiology at Maimonides Medical Center ("MMC") in July 1996. At all relevant times, Dr. Ketan Shevde served as Chair of MMC's Department of Anesthesiology and Dr. Bimal Massand was Director of Resident Education within the department. As summarized in the district court's opinion, Dr. Bakalova alleges the occurrence of thirteen distinct instances of sexual harassment between June 1997 and January 1998.

Residents at MMC have their performance evaluated on an ongoing basis by the Resident Evaluation Committee ("REC"). It is uncontested that Dr. Bakalova's performance had been criticized for months before, as well as during, the time in which the alleged harassment occurred. As the district court opinion sets forth, these criticisms are memorialized in minutes of REC meetings. More important, the district court opinion identifies the sources of various criticisms. By our count, eleven members of the REC who are not alleged to

have engaged in harassment toward Dr. Bakalova criticized her performance.

On January 8, 1998, Dr. Bakalova was given an American Board of Anesthesiology evaluation which concluded that her overall performance was "unsatisfactory". She was shown this evaluation, but was not terminated. It is undisputed that Dr. Bakalova was in fact told by Dr. Shevde that she could continue in the residency program if her performance improved. On January 19, 1998, Dr. Bakalova delivered a letter of resignation to Dr. Shevde.

MMC notes, and Dr. Bakalova does not dispute, that she "was not singled out for performance deficiencies: Drs. Yeretsky (male), Warden (male), Yong (female) and Mekala (female) left the residency program due to performance issues." MMC Brief at 17. There were at least a dozen residents in Dr. Bakalova's program.

Although it is unclear who initiated contact, within days of handing in her resignation letter, Dr. Bakalova spoke with Dr. Kathryn Lane, MMC's Vice–President of Academic Affairs. It is uncontested that this was the earliest occasion upon which Dr. Bakalova specifically raised the issue of sexual harassment with anyone in authority at MMC not alleged to be a harasser. Or, to be more precise, Dr. Bakalova does not contend that she did so on any earlier occasion. At most, Dr. Bakalova states that she "resisted Massand's advances and expressed her displeasure to Massand, Shevde ... each time they directed an offensive, unwelcome, sexually-charged comment at her." Bakalova Brief at 64.

It is also uncontested that Dr. Lane and Joyce Leahy, MMC's General Counsel, conducted an investigation in response to Dr. Bakalova's allegations. Although not mentioned by the district court, or by Dr. Bakalova, MMC notes that, as a result of the investigation, "Leahy ... concluded

that Massand's interactions with Bakalova were inappropriate and displayed poor judgment..... Consequently, Leahy recommended, and Shevde agreed, that someone else serve as the Director of Resident Education. Massand was, accordingly, removed from that position effective October 1998,...." MMC Brief at 18.

Finally, MMC had a substantial written policy against sexual harassment in place at all times relevant to the instant case. The policy was set forth in the MMC employee handbook. Dr. Bakalova acknowledged receipt of the handbook, but claims not to have read the section dealing with the policy.

## II.

We review a grant of summary judgment de novo. See Athridge v. Rivas, 312 F.3d 474, 477 (2d Cir.2002). The circumstances under which an employer may be held liable for the harassing conduct of a supervisory employee pursuant to Title VII are by now very clear. Following the Supreme Court's guidance we have held as follows:

> In contrast to allegations of harassment by co-workers or customers, employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). However, the employer will avoid liability if it can plead and prove, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such a supervisor, and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities

provided by the employer or to avoid harm otherwise. *See Burlington Industries,* 524 U.S. at 765; *Faragher,* 524 U.S. at 807.

*Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 (2d Cir.1998).

We agree with the district court that MMC has established both prongs of the *Ellerth/Faragher* defense. MMC's written policy against sexual harassment is comprehensive, and the policy was effected in Dr. Bakalova's case by means of a thorough investigation of her sexual harassment claims once MMC was made aware of them. As explained above, MMC was not made aware of the claims until after Dr. Bakalova submitted her resignation. The record is devoid, however, of any support for a finding that Dr. Bakalova could not have made her claims known to MMC well before her resignation.

Dr. Bakalova also claims that she was the target of illegal retaliation for having complained about sexual harassment, but with one exception, all of the acts of retaliation she alleges took place *before* MMC was made aware of her claims. Thus, as the district court found, Dr. Bakalova cannot make out an essential element of a retaliation claim, which is that alleged acts of retaliation are motivated by an employer's knowledge that an employee has made a discrimination complaint. *See, e.g., Raniola v. Bratton,* 243 F.3d 610, 624 (2d Cir.2001). The sole post-complaint act of retaliation involves communications between Dr. Shevde and medical licensing officials in Florida, where Dr. Bakalova sought to practice after leaving MMC. But Dr. Bakalova acknowledges that this appears to have been the result of a misunderstanding, that Dr. Shevde sent a "corrective letter", and that she was in fact eventually licensed to practice in Florida. Bakalova Brief at 22.

Having dismissed Dr. Bakalova's Title VII claims, the district court correctly declined to exercise jurisdiction over her state law claims. *See, e.g., Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988).

## III.

In conclusion, we feel compelled to note our dissatisfaction with the conduct of counsel for both sides in this case. Even as we affirm the district court, we cannot let some of the statements made by MMC about Dr. Bakalova's allegations pass unnoticed. For example, MMC says that Dr. Bakalova has never declared that Dr. Massand's attentions were "unwelcomed;" it ridicules Dr. Bakalova for mischaracterizing "off-premises socializing;" states that she "self-servingly maligns" Dr. Massad; and alleges that she "willingly plac[ed] herself within reach of the harasser." MMC Brief at 2, 9, 11, 43. These allegations would be less than fully professional in any case; they are actually offensive in this case, where MMC has admitted that Dr. Massand was demoted because of his conduct toward Dr. Bakalova.

We also find that Dr. Bakalova's counsel has made improper statements to this Court. For example, her assertion that the district court "determined that Bakalova indeed suffered hostile work environment sexual harassment," is a distortion of the district court's opinion. Bakalova Brief at 12. In fact, the district court did not make any such determination, but rather merely assumed *arguendo* that Dr. Bakalova had made out a *prima facie* case. Dr. Bakalova's counsel also seriously misrepresents the content of MMC's written policy against sexual harassment, stating, for example, that it does not inform employees "how to complain." Bakalova Brief at 10. This is simply untrue; the policy explicitly directs employees to "immediately report the alleged harassment in

confidence to the Vice President of Academic Affairs."

**IV.**

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED.**